**Brach Eichler L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
Special Counsel to Secured Creditor, SLC Holdings, LLC
DK-9675

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>MOUNT PROSPECT GROUP, LLC, | Case No.: 10-15541(scc)<br><br>Chapter 11<br><br>Hon. Shelley C. Chapman, U.S.B.J. |

**MOTION OF SLC HOLDINGS, LLC FOR ENTRY OF AN ORDER (1) PURSUANT TO 11 U.S.C. § 1112(b) DISMISSING DEBTOR'S BANKRUPTCY CASE OR, ALTERNATIVELY, (II) PURSUANT TO 11 U.S.C. § 362(d) GRANTING SLC HOLDINGS RELIEF FROM THE AUTOMATIC STAY**

Secured Creditor, SLC Holdings, LLC ("SLC"), by and through its undersigned counsel, hereby submits this Motion for entry of an Order (i) pursuant to 11 U.S.C. § 1112(b) dismissing the bankruptcy case of the Debtor, Mount Prospect Group, LLC ("MPG" or the "Debtor"), or alternatively, (ii) pursuant to 11 U.S.C. § 362(d) granting SLC relief from the automatic stay to continue its efforts to enforce its rights against its collateral. In support of its Motion, SLC respectfully submits as follows:

**PRELIMINARY STATEMENT**

1. SLC is the primary lender to the Debtor, having first priority security interest on the Debtor's real property more commonly known as 445-449 Mount Prospect Avenue, Newark, New Jersey (the "Mortgaged Property"), as well as an absolute, unconditional assignment of all

leases and rents generated by the Debtor's real property. As a result of a pre-petition default by the Debtor under their loan agreement, now assigned to SLC, the license that had been granted to the Debtor to use rental income was revoked, thereby divesting the Debtor of any property interest in the rents generated by the Mortgaged Property – which is essentially the Debtor's only income. As a result of this divestiture, the rental income is not the property of the Debtor's estate.

2. Further, the Debtor filed its bankruptcy case only after the appointment of a Rent Receiver to the Mortgaged Property by the Superior Court of New Jersey, Chancery Division, Essex County, on or about October 18, 2010. Despite the fact that Debtor is a single asset Limited Liability Company, organized under the laws of the State of New Jersey, with principal asset lying in New Jersey, Debtor inexplicably chose to venue its Bankruptcy case in the Southern District of New York. Debtor's rash bankruptcy filing in the Southern District of New York was clearly filed in a transparent attempt to forum shop, in an effort to obtain a litigation advantage in a two-party dispute between SLC and the Debtor. For this reason, the Debtor filed its bankruptcy in bad faith.

3. Finally, it is readily apparent that (i) there exists a substantial and continuing loss to the Debtor's estate with no likelihood that the Debtor can rehabilitate and (ii) there is no reasonable likelihood that the Debtor will be able to effectuate any plan of reorganization.

4. For these reasons, and for the reasons set forth herein, SLC submits that there is cause under 11 U.S.C. § 1112(b) to dismiss the Debtor's bankruptcy case and/or under 11 U.S.C. § 362(d) to grant SLC relief from the automatic stay to enforce its rights against its collateral.

## BACKGROUND

5. On October 22, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code for the Southern District of New York.

6. The Debtor is the owner of the Mortgaged Property located in Newark, New Jersey.

7. SLC's relationship with the Debtor stems from a July 9, 2007 loan made by Washington Mutual Bank ("WAMU") to the Debtor. SLC is the Assignee of the loan by Assignment from WAMU's successor-in-interests, JP Morgan Chase Bank, National Association, dated April 30, 2010.

8. By way of background, on or about July 9, 2007, WAMU made a mortgage loan to the Debtor, which was evidenced by a Promissory Note in the original principal amount of $2,662,500.00. On that same date, the Debtor also executed Nonrecourse/Limited Liability Addendum to Promissory Note which was incorporated into the Mortgage Note. (A true and correct copy of the Mortgage Note and Nonrecourse/Limited Liability Addendum are attached hereto as Exhibit "A").

9. The Mortgage Note and Nonrecourse/Limited Liability Addendum to Promissory Note are collectively referred to herein as the "Mortgage Note."

10. The Mortgage Note provided that the Debtor would make monthly installment payments of principal and interest beginning on September 1, 2007 and continuing month to month thereafter until August 1, 2016, when the balance of principal and interest would become due and payable. See Exhibit "A".

11. The Mortgage Note was secured by a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Mortgage") dated July 9, 2007. The Mortgage was

duly recorded in the Office of the Essex County Clerk on April 7, 2007 in Mortgage Book 12076, at Page 6743. (A true and correct copy of the Mortgage is attached hereto as Exhibit "B").

12.     As set forth in Section 2.2 of the Mortgage, the Debtor agreed to assign to WAMU, and its successors and assigns, all right title and interest in and to any and all current and future leases at the Mortgaged Property, and the rents, income and profits derived therefrom, should Debtor default on its obligations as set forth in the Mortgage Note and Mortgage.

13.     Pursuant to the Purchase and Assumption Agreement dated as of September 25, 2008, JPMorgan Chase Bank, N.A. ("JPMorgan Chase") purchased substantially all of the assets of Washington Mutual Bank, including, without limitation, the Mortgage Note and Mortgage, from the Federal Deposit Insurance Corporation, acting as Receiver for Washington Mutual Bank pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d). (A true and correct copy of the Purchase and Assumption Agreement is attached hereto as Exhibit "C").

14.     The Debtor defaulted on its obligations under the Mortgage Note and Mortgage by failing to make monthly payments which were due under the Mortgage Note since January 1, 2009. As a result of this default, SLC's predecessor, JPMorgan Chase brought forth a Foreclosure action against the Debtor in the Superior Court of New Jersey, Chancery Division, Essex County (Docket No.: F-15478-09), on or about May 15, 2009. (A true and correct copy of the Complaint in Foreclosure is annexed hereto as Exhibit "D").

15.     Thereafter, pursuant to an Assignment of Loan Documents, dated as of April 29, 2010, SLC purchased the Mortgage Note, Mortgage and all other loan documents covering the Mortgaged Premises from JPMorgan Chase. This Assignment of Loan Documents included a

separate Assignment of Foreclosure Claim, Assignment of Mortgage and Allonge to Promissory Note, through which SLC acquired all rights to the Mortgage, including the right to pursue the claim in Foreclosure filed by JPMorgan. (A true and correct copy of the Assignment of Loan Documents, Assignment of Foreclosure Claim, Assignment of Mortgage, and Allonge to Promissory Note are annexed hereto as Exhibit "E").

16. In addition to defaulting on its obligations by failing to make the required monthly payments under the Mortgage Note and Mortgage, the Debtor has further failed in its responsibility to maintain the property. Based upon a Property Condition Assessment Report received by SLC in connection with the Mortgaged Property, there are ten (10) construction systems within the Mortgaged Property that are in immediate and urgent need of repair. Among these construction systems are the property's electrical system, piping, and retaining walls. In total, the Property Condition Assessment Report finds that the total cost of all items in need of immediate repair to be approximately $222,500.00. (A true and correct copy of the Property Condition Assessment Report is annexed hereto as Exhibit "F").

17. Despite the need to immediately repair these properties, SLC never learned of any efforts made on behalf of the Debtor to initiate repair of the Mortgaged Property. As a result of the dilapidation of the Mortgaged Property, SLC's security interest in the Mortgaged Property is endangered.

18. Further, upon information and belief, Debtor has failed to maintain adequate insurance on the Mortgaged Property, as required pursuant to the Mortgage Note and Mortgage.

19. Additionally, the Debtor has failed to pay any real estate taxes on the Mortgaged Property since 2009. While SLC's predecessor, JPMorgan Chase advanced the property tax payments on the Mortgaged Property for 2009, the property taxes for the Mortgaged Property for

the entire 2010 tax year remains outstanding. (A true and correct copy of two Certificates of Current Property Tax and Assessment Status documenting the delinquent tax payments is attached hereto as Exhibit "G").

20. Finally, based on an appraisal report prepared by Anthony F. Lama Realty Services, Inc., dated August 13, 2010, the Debtor has no equity in the Mortgaged Premises as the appraised value is $2,000,000.00 and the amount due to SLC and secured by the Mortgage as of August 23, 2010 is $3,196,733.69. (A true and correct copy of the August 13, 2010 appraisal report is annexed hereto as Exhibit "H").

21. As a result of the foregoing, on or about June 9, 2010, SLC moved before the Superior Court of New Jersey, Chancery Division for an Order Appointing a Rent Receiver on the property, as authorized pursuant to the loan documents.

22. On October 18, 2010, the Court granted SLC's Motion and appointed David Dubrow of Dubrow Management Corp. as Rent Receiver for the Mortgaged Property. (A true and correct copy of the October 18, 2010 Order Appointing Rent Receiver is annexed hereto as Exhibit "I")

23. Immediately upon receipt of the Rent Receiver Order, on October 20, 2010 this office forwarded a copy of this Order to Debtor, care of its Managing Member, Ben Weinfield, via Certified, Return Receipt Requested and Regular Mail. (A true and correct copy of the October 20, 2010 letter to Ben Weinfield is annexed hereto as Exhibit "J")

24. A mere day after receipt of the Rent Receiver Order, rather than comply with the provisions therein, Debtor filed a *Pro Se* Chapter 11 Bankruptcy Petition. With its petition, Debtor failed to file any Motions authorizing the use of its cash collateral, for which the Superior

Court of New Jersey had already assigned over to the Rent Receiver prior to the Debtor's bankruptcy filing.

25. Despite failing to file the necessary Motions authorizing the use of cash collateral, upon filing the within bankruptcy, the Debtor immediately wrote to SLC and the Rent Receiver advising the Rent Receiver that he was "legally not allowed as receiver on the property."

26. A review of the Debtor's Schedules submitted with its Voluntary Petition reveals that the Debtor's principal asset is Real Property located in the State of New Jersey. Aside from SLC, the Debtor has no other creditors with security interests in its property, and lists very few creditors as having any unsecured claims against the property, naming only Public Service Electric & Gas Co. and the City of Newark Water Department.

## RELIEF REQUESTED AND BASIS THEREFOR

27. Through this Motion, SLC seeks entry of an Order pursuant to 11 U.S.C. §§ 1112(b) and/or 362(d), dismissing the Debtor's bankruptcy case and/or granting SLC relief from the automatic stay to enforce its rights against collateral.

## DISMISSAL OF THE DEBTOR'S BANKRUPTCY CASE IS WARRANTED

28. Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish the requested conversion or dismissal is not in the best interests of the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, ***if the movant establishes cause***…

(***emphasis added***)

29. The inclusion of the word "shall" was a change in the statute pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which

7

eliminated the vast discretion that bankruptcy courts had previously been granted in making a conversion determination prior to enactment of the act. See 7 Collier on Bankruptcy ¶ 112.04(1) at 1112-21 to 1112-22 (15th ed. rev.)

30. Therefore, pursuant to Section 1112(b), absent the enumerated mitigating circumstances, upon a showing of "cause," the Court must dismiss the Debtor's bankruptcy case. SLC submits that no mitigating circumstances exist in the within bankruptcy and, therefore, this Court must dismiss the Debtor's bankruptcy case.

31. It is well settled that "a chief purpose of the bankruptcy laws is to 'secure a prompt and effectual administration and settlement of the estate of all bankrupts.'" Katchen v. Landy, 382 U.S. 323, 328-29 (1966) (citations omitted). In order to avoid incurring the costs associated with such administration in cases where such costs are not justified, the United States Congress enacted 11 U.S.C. § 1112(b) to provide a Court with a tool to eliminate the burden of such costs in inappropriate Chapter 11 cases at the earliest possible stage. See In re: Woodbrook Assocs., 19 F.3d. 312, 317 (7th Cir. 1994).

32. Thus, the threshold question for the Bankruptcy Court when ruling on a Motion to Dismiss under 11 U.S.C. § 1112(b) is whether "cause" exists to grant such a Motion. As set forth herein, SLC submits dismissed because such "cause" exists to dismiss the Debtor's bankruptcy case under 11 U.S.C. § 1112(b).

**A.   The Debtor Filed Its Bankruptcy in Bad Faith**

33. Bankruptcy Courts have regularly found that the filing of a bankruptcy petition in bad faith is grounds for dismissal of the Debtor's bankruptcy case. See, e.g., Carolin Corp. v. Miller, 886 F.2d. 693 (4th Cir, 1989), In re: MacInnis, 235 B.R. 255 (2nd Cir. 1998).

34. In considering whether a Debtor's bankruptcy petition was filed in bad faith, the Court must consider "the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy case. In re: C-TC 9th Avenue Partnership, 113 F.3d. 1304 (2nd Cir. 1997). A Bankruptcy Court will deem a Debtor's bankruptcy petition to be frivolous if "it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." Id.

35. If particular relevance as to whether a Debtor's bankruptcy petition was filed in bad faith is whether "the petition is merely filed to obtain a tactical litigation advantage." See In re: 15375 Memorial Corp., 589 F.3d. 605, 618 (3rd Cir. 2009); See also In re: C-TC 9th Avenue Partnership, 113 F.3d. 1304 (2nd Cir. 1997). The Debtor cannot merely file a bankruptcy petition to avoid the adverse consequences of an adverse State Court decision, but must be able to offer a credible plan of reorganization.

36. In the Second Circuit, courts look to the following factors to determine whether a debtor has acted in bad faith:

> the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

In re: C-TC 9th Avenue Partnership, 113 F.3d. 1304 (2nd Cir. 1997)

37. Herein, the Debtor filed its bankruptcy petition solely to invoke the automatic stay and obstruct the Rent Receiver appointed by the Superior Court of New Jersey, Chancery Division. The Debtor has not filed any applications for permission to use its cash collateral and has not filed anything with the Bankruptcy Court in the three (3) weeks since filing its Voluntary Petition.

38. The Debtor's bankruptcy filing was clearly the result of a two-party dispute between the Debtor and SLC, and resulted solely from Debtor's default under its loan obligation to SLC. Indeed, the Debtor filed its Bankruptcy Petition only after a Rent Receiver was appointed by the Superior Court of New Jersey in the action to foreclose on the Mortgaged Premises.

39. Further, The Debtor has been unable to make Mortgage, property tax and utility payments for the past year, and has clearly demonstrated no ability to reorganize and meet its operating expenses. (See Exhibit "G")

40. Based upon the foregoing, SLC requests that the Court dismiss the Debtor's bankruptcy case under 11 U.S.C. § 1112(b).

**B.** **Substantial Continuing Loss to Estate & Absence of Reasonable Likelihood of Rehabilitation**

41. Under 11 U.S.C. § 1112(b)(4)(A), one of the specifically-enumerated examples of "cause" occurs when there is either a substantial or continuing loss to or diminution of the estate and that there is an absence of a reasonable likelihood of rehabilitation. see In re: Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (noting that the purpose of this section is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation"); In re: AdBrite Corp., 290 B.R.

209, 215 (Bankr. S.D.N.Y. 2003) ("{c}courts have held that a negative cash flow postpetition and an inability to pay current expenses satisfy the elements of § 1112(b)(1)").

42. As demonstrated below, both prongs to 11 U.S.C. § 1112(b)(4)(A) are satisfied.

**(i)** **Substantial or Continuing Loss to or Diminution of the Estate**

43. The first prong of this section requires only a showing of either substantial or continuing loss to the estate or diminution of the estate – it does not require both. See Moody v. Security Pacific Bus. Credit, Inc., 85 B.R. 319, 343 (W.D. Pa. 1988), vacated on other grounds, 858 F.2d 137 (3rd Cir. 1988). "All that need be found is that the estate is suffering from diminution of value." In re: Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988). Moreover, a showing that the debtor has incurred continuing losses, has maintained a negative cash flow after its bankruptcy filing, or has become administratively insolvent satisfies this element. Loop Corp. v. U.S. Trustee (In re: Loop Corp.), 379 F.3d 511, 516 (8th Cir. 2004); In re: Route 202 Corp. t/a Lionti's Villa, 37 B.R. 367, 374 (Bankr. E.D. Pa. 1984).

44. Herein, there exists both a continuing loss to the estate and a diminution of value to the estate. First, as a result of the Debtor having assigned its rental income to SLC, the Mortgaged Property does not generate income that can be used for the Debtor's post-petition operations, thereby resulting in negative cash flow. A Rent Receiver was appointed by the Superior Court of New Jersey on October 18, 2010 and, pursuant to that Court's Order, all funds generated by the Mortgaged Property should be delivered to the Receiver. Only the Debtor's bad faith bankruptcy filing has obstructed this process.

45. Finally, in addition to operating losses, and in view of the current real estate crisis being experienced throughout this country and the State of New Jersey, it is likely that the value of the Mortgaged Property will continue to deteriorate.

46. As a result, every single one of the post-petition expenses of the Debtor's estate are diminishing the value of the estate and thereby taking money straight from the pockets of SLC, the Debtor's only secured creditor. This is precisely the scenario that the Bankruptcy Court must take into account. In re: Route 202 Corp. t/a Lionti's Villa, 37 B.R. 367, 374 (Bankr. E.D. Pa. 1984).

C. **The Debtor Has Cannot Fund an Effective Plan of Reorganization and/or Make Adequate Protection Payments Under the Note and Mortgage**

   (i) **Under Applicable New Jersey Law, the Debtor Has No Interest In Cash Collateral of the Estate**

47. Section 363(a) of the Bankruptcy Code defines cash collateral to include rents. Section 363 of the Bankruptcy Code provides that a debtor-in-possession may not use, sell, or lease cash collateral unless (a) each entity that has an interest in such cash collateral consents; or (b) the Court, after notice and hearing, authorizes such use, sale, or lease in accordance with Section 363 of the Bankruptcy Code.

48. Upon information and belief, the Debtor is a single-asset entity, for which its' sole source of income are the rents generated at the Mortgaged Property. As a result, the Debtor does not have the ability to sustain its Bankruptcy or provide adequate protection to its principal secured creditor, SLC. Moreover, the Rents of the Mortgaged Property are not property of the estate and do not constitute "cash collateral."

49. Under 11 U.S.C. 362, the debtor-in-possession is required to "shoulder the burden as to adequate protection and all other issues, except the debtor's equity in the property." In re: Hutton-Johnson Co., Inc., 6 B.R. 855 (S.D.N.Y. 1980). Likewise, the debtor-in-possession must also demonstrate "a reasonable possibility of successful reorganization." Id. (citing In re: Terra Mar Assoc., 3 B.R. 462 (D. Conn. 1980). In this regard, it has been stated, 'debtors should not continue . . . under the umbrella of the reorganization court beyond the point at which

12

reorganization no longer remains a realistic undertaking, unless liquidation would proceed more expeditiously and less expensively under the control of the debtor.'" In re: McDeremott, 78 B.R. 646, 651 (Bankr. N.D.N.Y. 1985).

50. Herein, the Debtor is unable to demonstrate any reasonable possibility of successful reorganization, as the only income it receives is not even its property, but the property of its principal secured creditor, SLC, through the Absolute Assignment of Rents granted by the Debtor in its Mortgage.

51. The law of New Jersey is well settled that an Assignment of Rents is considered absolute, with title passing to the assignee, and the assignor retaining no interest in the rents. In re: Loco Realty Corp., 2009 WL 2883050 (S.D.N.Y.); Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34 (3d Cir. 1993); First Fidelity Bank N.A. v. Jason Realty, L.P., 59 F.3d 423 (3d Cir. 1995) (commonly referred to as "In Re: Jason Realty, L.P."). The Rents are not the property of the estate under Section 541 of the Bankruptcy Code, and belong to SLC. The Debtor is a single asset real estate entity. At the present time, the Debtor has no income from the Mortgaged Property, nor does the Debtor have a means of generating income other than the rents generated from the Mortgaged Property.

52. Under the law of the States of New Jersey, an absolute assignment of rents provision, title to the rents passes to the assignee upon default. See IBM Corp. v. Axinn, 290 N.J.Super. 564, 568, 676 A.2d 552 (App.Div.1996). Jason Realty held that, under New Jersey law, "[a]n assignment is absolute if its language demonstrates an intent to transfer immediately the assignor's rights and title to the rents" and if the parties "mutually agree in words of the present to transfer full title to the rents." See In re Jason Realty, L.P., 59 F.3d at 427. After

analyzing New Jersey law, Jason Realty concluded an absolute assignment of leases could be conditional upon default by the debtor. See In re Jason Realty, L.P., 59 F.3d at 428-29.

53. In the instant matter, there can be no dispute that the Debtor gave the WAMU and all of its successors in interest, including SLC, an absolute assignment of rents. An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance. See Restatement (Second) of Contracts § 317; see generally Aronsohn v. Mandara, 98 N.J. 92, 484 A.2d 675, 678-79 (N.J.1984). The precise wording determines the effect of the assignment. See In re Winslow Center Assocs., 50 B.R. 679, 681 (Bankr.E.D.Pa.1985); In re Pine Lake Village Apartment Co., 17 B.R. 829, 834 (Bankr.S.D.N.Y.1982); Matter of Glen Properties, 168 B.R. 537 (Bankr. D.N.J.1993).

54. It is well settled that Courts must analyze the applicable state law in determining a debtor's property right in rents. See Butner v. United States, 440 U.S. 48, 54 (1979); First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re: Jason Realty, L.P.), 59 F.3d 423, 427 (3d Cir. 1995) ("Assignments of rents are interests in real property and, as such, are created and defined in accordance with the law of the situs of the real property."). Herein, Section 11 of the Mortgage provides that the law of the State of New Jersey, where the Debtor was formed and where the Mortgaged Property resides, should govern this matter. See Exhibit "B" at ¶ 11.

55. Under New Jersey law, an absolute assignment transfers title to the assignee upon its execution. See New Jersey Nat'l Bank & Trust Co. v. Wolf, 108 N.J.Eq. 412, 155 A. 372 (N.J. Ch. 1931). An assignment is absolute if its language demonstrates intent to transfer immediately the assignor's rights and title to the rents. See In re Winslow Center Assocs., 50 B.R. at 681-82 (applying New Jersey law). Here, the language of the Rent Assignment clearly indicates the

intent of the Debtor to grant to the bank and its successor, SLC ownership of the Rents, as evidenced by Section 2.2 of the Mortgage, which states that the Debtor:

> (a) …hereby absolutely and unconditionally grants, transfers, conveys, sells, sets over and assigns to Lender all of Borrower's right, title and interest now existing and hereafter arising in and to the leases, subleases,…
>
> …and hereby gives to and confers upon Lender the right to collect all the income, rents, issues, profits, royalties and proceeds from the Leases and any business conducted on the Property and any and all prepaid rent and security deposits thereunder (collectively, the "Rents").

See Exhibit "B" at ¶ 2.2.

56. Additionally, Section 5.3 of the Mortgage further provides that, in the event of Default, Lender or its assignee may:

> (a) Have a receiver appointed as a matter of right…to take possession and control of the Property and shall collect and receive rents.

See Exhibit "B" at ¶ 5.3.

57. The intent of the parties was clearly understood by the Superior Court of New Jersey, which has already appointed a Rent Receiver to the Mortgaged Property on October 18, 2010. As such, it is clear that rents collected by the Debtor were nothing more than a license to be used by the Debtor until such time there was a default in payments due under the Note and Mortgage.

### (ii) Even Under the Laws of the State of New York, this Court Must Find that the Debtor Still Has No Interest In Cash Collateral of the Estate

58. Should this Court find that New Jersey law does not apply to the within matter, the Court nonetheless find the Assignment of Rents to be valid and enforceable. Under New York law, a "mortgage assignment of rent clause that constitutes a pledge of rents as security in case of a default" is not an absolute assignment. In re: Temple Court Assocs., 1996 U.S. Dist. LEXIS 13772, at *9 (S.D.N.Y. Sept. 18, 1996). If the assignment of rent clause creates a

security interest, the "mortgagee's interest in unpaid rents does not become enforceable until either a receiver is appointed or the mortgagee comes into possession of the property." In addition, under New York law, "an assignment of rents clause in a mortgage is not self-executing and operates merely as a pledge of the rents, to which the pledgee does not become entitled until he asserts his right by taking affirmative steps, such as the appointment of a receiver to collect the rents for the benefit of the mortgagee, or obtaining an order for the sequestration of the rents." In re: Pine Lake Vill. Apartment Co., 17 B.R. 829, 833 (Bankr. S.D.N.Y. 1982).

59. Here, the language of Section 2.2 of the Mortgage clearly demonstrates than an absolute assignment of rents, and not a security interest, was executed. SLC's title to the rents was not dependent on any default on the part of the Debtor. Moreover, even if the assignment could be construed as a security interest, SLC took affirmative actions by appointing the receiver on October 18, 2010, before the petition date. Therefore, whether the assignment of rents is construed as a security interest or not, the Debtor absolutely assigned its interests and title to the rents pre-petition to SLC, as the assignee for WAMU and its successor-in-interest, JP Morgan Chase. Moreover, under New York law, the "appointment of a receiver does not change title to the property." In re: Koula Enters., 197 B.R. 753, 758 (Bankr. E.D.N.Y. 1996).

> A receiver pendente lite is a person appointed to take charge of the fund or property to which the receivership extends while the case remains undecided. The title to the property is not changed by the appointment. The receiver acquires no title, but only the right of possession as the officer of the court. The title remains in those in whom it was vested when the appointment was made. The object of the appointment is to secure the property pending the litigation, so that it may be appropriate in accordance with the rights of the parties, as they may be determined by the judgment in the action.

Id.

60. A receiver only effectuates a change in who has a right to possess the rents, not title. Therefore, as of the petition date, SLC held title to the rents from the Property.

**(iii)** **Even If the Rents of the Mortgaged Property Were "Cash Collateral", the Debtor Still Has Not Established an Effective Plan of Reorganization and/or the Ability to Make Adequate Protection Payments Under the Note and Mortgage**

61. Finally, notwithstanding the conclusive precedent under New Jersey and New York law that the rents to the Mortgaged Premises are the property of SLC, assuming *arguendo* that the rents were in fact "cash collateral," the Debtor's motion would still have to be denied because the Debtor has not met, and cannot meet, its burden of showing adequate protection. See, II U.S.C. §363(p)(l).

62. As evidenced by Debtor's failure to pay expenses for the past year, it is clear that the Debtor's is operating at a loss. The Debtor has offered no viable proposal for providing adequate protection to SLC.

63. Furthermore, as demonstrated by the appraisal summaries annexed hereto as Exhibit "H," the "as is" market values of the Mortgaged Property is $2,000,000.00. This fair market value is significantly less than the more than $3,196,733.69 due on the Note and Mortgage. See, Certification of David Stein annexed hereto as Exhibit "K".

64. For all these reasons, SLC respectfully requests that the Court dismiss the Debtor's Chapter 11 Bankruptcy pursuant to 11 U.S.C. § 1112(b).

**IN THE ALTERANTIVE, THE COURT SHOULD GRANT SLC**
**RELIEF FROM THE AUTOMATIC STAY**

65. Section 362(d)(1) of the Bankruptcy Code provides:

(d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

66. To the extent that this Court does not find that dismissal of the Debtor's bankruptcy case is warranted, SLC respectfully submits that cause exists under 11 U.S.C. § 362(d)(1) to grant SLC relief from the automatic stay to continue its pre-petition efforts to enforce its rights against its collateral.

67. First, cause exists under Section 362(d)(1) to grant SLC relief from the automatic stay because, as discussed at length above, the Debtor commenced its bankruptcy case in bad faith. See In re: Kornhauser, 184 B.R. 425, 428 (Bankr. S.D.N.Y. 1995), citing In re: Laguna Associates, 30 F.3d. 734 (6th Cir. 1994) for the proposition that "it is well settled that a bad faith filing constitutes 'cause' for relief from the automatic stay."); See also In re: C-TC 9th Avenue Partnership, 113 F.3d. 1304 (2nd Cir. 1997); In re: MacInnis, 235 B.R. 255 (2nd Cir. 1998).

68. Importantly, the standard for bad faith is the same in the context of a dismissal under 11 U.S.C. § 1112(b) and relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

69. Second, the Debtor's have filed no monthly operating reports, submitted any applications to use cash collateral or established that they can provide SLC with adequate protection, to the extent it is permitted to continue operating its business under bankruptcy protection.

70. For the foregoing reasons, SLC respectfully submits that, should the Court decline to dismiss the Debtor's bankruptcy case, the Court should nevertheless grant SLC's Motion for relief from the automatic stay and permit SLC to continue its pre-petition efforts to enforce its rights against its collateral, including its efforts to enforce the October 18, 2010 Order Appointing a Rent Receiver to the Mortgaged Property.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, SLC respectfully requests that the Court grant its Motion and enter an Order dismissing the Debtor's bankruptcy case or, alternatively, grant SLC relief from the automatic stay to continue its pre-petition efforts to foreclose against its collateral, and grant SLC such other and further relief as the Court deems just and equitable.

Dated: November 17, 2010

                                         BRACH EICHLER L.L.C.
                                         Counsel for Secured Creditor
                                         SLC Holdings, LLC

                                         By:  David J. Klein
                                               David J. Klein. Esq. (DK-9675)
                                             101 Eisenhower Parkway
                                             Roseland, NJ  07068
                                             Tel:  973-228-5700
                                             Fax:  973-618-5531
                                             dklein@bracheichler.com