# EXHIBIT A

Loan No.: 770153799

(NOTE: THIS PROMISSORY NOTE MAY REQUIRE A BALLOON PAYMENT AT MATURITY)

## PROMISSORY NOTE

$2,662,500.00 (U.S.)					July 9, 2007

FOR VALUE RECEIVED, the undersigned (individually and collectively, "Borrower"), jointly and severally, promise to pay to the order of WASHINGTON MUTUAL BANK, a federal association, at P.O. Box 650528, Dallas, Texas 75265-0528, or at such other place as the holder of this Note ("Lender") may from time to time designate in writing, the sum of $2,662,500.00 in lawful money of the United States, with interest thereon from the date of disbursement by Lender (whether into escrow or otherwise) until paid at the rates set forth below. Interest accruing on this Note will be calculated on the basis of the actual number of days elapsed for any whole or partial month in which interest is being calculated and on the basis of a 360-day year ("Actual/360 Basis"). The Monthly Payment Amounts (as defined below) will also be calculated on an Actual/360 Basis, except that the initial Monthly Payment Amount provided for in Section 3(a) below is calculated on the basis of a 360-day year consisting of 12 months of 30 days each ("30/360 Basis").

### SECTION 1. Initial Interest Rate.

The per annum interest rate hereunder (the "Note Rate") shall initially be a rate (the "Initial Rate") determined as follows (and, in either case, subject to adjustment on and after the Initial Interest Adjustment Date as provided in Section 2 below):

(a) If the Initial Monthly Payment Date (as defined below) is not more than one calendar month after the month in which this Note is funded, the Initial Rate shall be 6.47000% per annum (the "Stated Interest Rate").

(b) Otherwise, the Initial Rate, applicable for the full or partial calendar month at the beginning of the term of this Note, shall be a rate equal to the higher of (i) the Stated Interest Rate, or (ii) the Fully Indexed Rate. Thereafter, the Note Rate in effect through the day immediately prior to the Initial Interest Adjustment Date shall be the Stated Interest Rate. As used herein, "Fully Indexed Rate" means the LIBOR Rate (as defined below) determined as of 11:00 a.m., London time, two (2) London Banking Days (as defined below) before the first day of the month in which this Note is dated plus the Margin (as defined below).

### SECTION 2. Interest Rate Adjustments.

(a) **Interest Adjustment Date.** Beginning on August 1, 2014 (the "Initial Interest Adjustment Date"), and on the same day of every sixth month thereafter, the Note Rate shall be adjusted as provided below. Each date on which the Note Rate is to be adjusted as provided in this Note is referred to as an "Interest Adjustment Date."

(b) **The Index.** Beginning with the Initial Interest Adjustment Date, the Note Rate will be based on the Index (as defined below). As used in this Note, the term "Index" means the LIBOR Rate. The most recent Index figure available as of 11:00 a.m., London Time, two (2) London Banking Days before each Interest Adjustment Date is referred to in this Note as the "Current Index."

(i) Before each Interest Adjustment Date, Lender will calculate the new Note Rate by adding 2.75000% (the "Margin") to the Current Index; provided that, except for the adjustment made on the Initial Interest Adjustment Date, the Note Rate will never increase or decrease on any single Interest Adjustment Date more than one percentage point (1.00%) from the immediately preceding Note

Loan No.: 770153799

Rate except as set forth in Section 9 below. Subject to the limits stated in Section 2(b)(ii) below, this amount will be the Note Rate until the next Interest Adjustment Date.

(ii) Except as set forth in Section 9 below, the Note Rate will never be greater than 12.70000% per annum (the "Rate Limit").

(iii) If for any reason Lender fails to make an adjustment to the Note Rate or the Monthly Payment Amount as described in this Note, regardless of any notice requirement, Lender may, upon discovery of such failure, then make such adjustment as if it had been made on time. Borrower agrees not to hold Lender responsible for any damages that may result from Lender's failure to make the adjustment and to allow Lender, at its option, to apply any excess monies that Borrower may have paid to partial prepayment of the unpaid principal balance of this Note, provided that such prepayment shall not be subject to any Prepayment Premium provided for in any addendum to this Note.

(c) **Definitions.** As used herein, the following terms shall have the meanings set forth below:

"LIBOR Rate" means the rate, rounded to the nearest one-thousandth of one percentage point (0.001%) for deposits in United States dollars for maturities of six months as of the relevant date and time of determination, as determined by Lender based upon the British Bankers Association fixing of the London Interbank Offered Rate.

"London Banking Day" means any day (i) that is not a Saturday or Sunday and (ii) on which commercial banks are generally open for business (including dealings in foreign exchange and foreign currency deposits) in London, England and dealings are carried on in the London interbank market.

(d) **Illegality; Unavailability of LIBOR Rate.**

(i) If in the sole judgment of Lender (A) it shall become unlawful for Lender to obtain funds in the London interbank market or to continue to fund or maintain principal amounts bearing interest at rates determined by reference to the LIBOR Rate; or (B) because of conditions in the relevant money markets, the LIBOR Rate will not adequately reflect the cost to Lender of making, funding or maintaining the principal amount of this Note; or (C) the LIBOR Rate is no longer available or is no longer calculated or reported on a basis reasonably comparable to the basis on which it is calculated and reported on the date of this Note, then, in any such event, Lender shall choose a new index that reasonably reflects the cost to Lender of making, funding or maintaining the principal amount of this Note, and such new index shall then be the Index. Lender shall give Borrower notice of such choice.

(ii) For purposes of this Note, all determinations hereunder may, in the sole discretion of Lender, be made as if Lender had actually funded and maintained the principal balance hereof through the purchase of deposits having successive terms of six months each, extending from one Interest Adjustment Date to the next, and bearing interest at a rate equal to the Index rate during each such period.

SECTION 3. **Monthly Payments.**

Beginning on September 1, 2007 (the "Initial Monthly Payment Date") and on the same day of each and every calendar month thereafter throughout the term of this Note (the "Monthly Payment Dates"), Borrower shall make monthly payments of principal and interest (the "Monthly Payment Amounts") to Lender as provided below. Each Monthly Payment Amount will be calculated on the basis of an amortization period (the "Amortization Period") of 360 months ending on the date that is that number of months after the day that is one month before the Initial Monthly Payment Date.

(a) Beginning on September 1, 2007 the Monthly Payment Amount shall be $16,776.32 for each month prior to the Initial Payment Change Date (as defined in subparagraph (b) below).

(b) The Monthly Payment Amount shall be adjusted beginning on September 1, 2014 (the "Initial Payment Change Date"), and on the same day of every sixth month thereafter, to an amount sufficient to fully repay the unpaid principal balance of this Note, together with interest at the Note Rate as most recently adjusted prior to the applicable Amortization Adjustment Date (as defined below), by the end of the Amortization Period in substantially equal installments. Each date on which the Monthly Payment Amount will be adjusted pursuant to this Section 3 is referred to as an "Amortization Adjustment Date."

### SECTION 4. Maturity.

Any and all remaining unpaid principal of and interest on this Note shall be due and payable in full on August 1, 2016 (the "Maturity Date").

### SECTION 5. Application of Payments.

So long as no Event of Default (as used in this Note, the terms "Event of Default" and "Default" have the meanings given to those terms in the Security Instrument described in Section 8) exists, payments under this Note and the Security Documents shall be applied: (a) first, to the payment of accrued interest; (b) second, at the option of Lender, to the payment of any other amounts owing under this Note or secured by the Security Documents, other than accrued interest and principal, including, but not limited to advances Lender may have made for attorneys' fees or for taxes, assessments, insurance premiums, or other charges on any property given as security for this Note and late charges due hereunder; and (c) third, to the reduction of principal of this Note. After the occurrence and during the continuance of an Event of Default, Lender may apply such payments to the obligations secured by the Security Instrument in such manner as it may elect in its sole discretion.

### SECTION 6. Prepayment.

Borrower may prepay its obligation under this Note only if, to the extent and on the terms and subject to the conditions set forth in an addendum to this Note attached hereto and incorporated herein by this reference. If no such addendum is attached to this Note, Borrower may not prepay its obligation under this Note. Notwithstanding the foregoing, if no such addendum is attached to this Note and Lender, in its sole discretion, agrees to permit a prepayment, then it may do so on such terms and conditions as it may require in its sole discretion. No partial prepayment of this Note shall change the date or amount of any subsequent monthly payment required under the terms of this Note prior to payment in full of all amounts owing under this Note unless otherwise agreed in writing by Lender in its sole discretion.

### SECTION 7. Late Charge.

If any amount payable under this Note is not paid within 15 days after the due date thereof, Borrower shall pay a late charge of 5.00000% of the delinquent amount as liquidated damages for the extra expense in handling past due payments; provided, however, that no such late charge shall be payable with respect to any balloon payment due on the Maturity Date. Any late charge payable under this section is in addition to any interest payable at the Default Rate (as defined below).

### SECTION 8. Security.

This Note is secured by a deed of trust, security agreement, assignment of leases and rents, and fixture filing or a mortgage, security agreement, assignment of leases and rents, and fixture filing (the "Security Instrument") of even date herewith and executed by Borrower, encumbering the real property described in the Security Instrument. The Security Instrument and any and all other documents securing

Loan No.: 770153799

this Note are collectively referred to as the "Security Documents"; provided, however, that "Security Documents" specifically shall not mean and shall not include the certificate and indemnity agreement regarding hazardous substances being delivered concurrently herewith to Lender by Borrower (the "Indemnity Agreement"). The real property and the other collateral provided for in the Security Documents are collectively referred to as the "Property."

Notwithstanding anything to the contrary in this Note or the Security Documents, this Note shall not evidence Borrower's obligations under the Indemnity Agreement and nothing contained in this Note or the Security Documents shall be deemed to limit or expand Borrower's obligations under such Indemnity Agreement. All of such obligations (and all substantial equivalents of such obligations) shall constitute the separate, unsecured recourse obligations of Borrower and shall not be deemed to be evidenced by this Note or secured by the Security Documents.

### SECTION 9. Default; Remedies.

If any amount payable under this Note is not paid within 15 days after the date when due or if any other Event of Default has occurred and is continuing, then, at the option of Lender, the entire indebtedness evidenced hereby shall become immediately due and payable. Upon the occurrence of an Event of Default, and without notice or demand, all amounts owed under this Note, including all accrued but unpaid interest, shall thereafter bear interest at a variable rate, adjusted at the times at which the Note Rate would otherwise have been adjusted pursuant to Section 2, of 5% per annum above the Note Rate that would have been applicable from time to time had there been no Event of Default (the "Default Rate") until all Events of Default are cured. Failure to exercise any option granted to Lender hereunder shall not waive the right to exercise the same in the event of any subsequent Event of Default. Interest at the Default Rate shall commence to accrue upon the occurrence of any Event of Default, including the failure to pay this Note at maturity.

### SECTION 10. Attorneys' Fees.

In the event of any Default, or in the event that any dispute arises relating to the interpretation, enforcement, or performance of this Note, Lender shall be entitled to collect from Borrower on demand all fees and expenses incurred in connection therewith, including but not limited to fees of attorneys, accountants, appraisers, environmental inspectors, consultants, expert witnesses, arbitrators, mediators, and court reporters. Without limiting the generality of the foregoing, Borrower shall pay all such costs and expenses incurred in connection with: (a) arbitration or other alternative dispute resolution proceedings, trial court actions, and appeals; (b) bankruptcy or other insolvency proceedings of Borrower, any guarantor or other party liable for any of the obligations of this Note or any party having any interest in any security for any of those obligations; (c) judicial or nonjudicial foreclosure on, or appointment of a receiver for, any property securing this Note; (d) postjudgment collection proceedings; (e) all claims, counterclaims, cross-claims, and defenses asserted in any of the foregoing whether or not they arise out of or are related to this Note or any security for this Note; (f) all preparation for any of the foregoing; and (g) all settlement negotiations with respect to any of the foregoing.

### SECTION 11. Miscellaneous.

(a) Every person or entity at any time liable for the payment of the indebtedness evidenced hereby waives presentment for payment, demand, and notice of nonpayment of this Note. Every such person or entity further hereby consents to any extension of the time of payment hereof or other modification of the terms of payment of this Note, the release of all or any part of the security herefor or the release of any party liable for the payment of the indebtedness evidenced hereby at any time and from time to time at the request of anyone now or hereafter liable therefor. Any such extension or release may be made without notice to any of such persons or entities and without discharging their liability.

Loan No.: 770153799

(b) Each person or entity who signs this Note is jointly and severally liable for the full repayment of the entire indebtedness evidenced hereby and the full performance of each and every obligation contained in the Security Documents; provided, however, that if, but only if, a Limited Liability Addendum is attached to and incorporated into this Note, the liability of any person or entity that signs this Note will be limited as provided in such Addendum.

(c) The headings to the various sections have been inserted for convenience of reference only and do not define, limit, modify, or expand the express provisions of this Note.

(d) Time is of the essence under this Note and in the performance of every term, covenant and obligation contained herein.

(e) This Note is made with reference to and is to be construed in accordance with the laws of the state where the Property is located.

(f) Notwithstanding any contrary provision of applicable law, each general partner in any partnership that is a party hereto, agrees that Lender need not exhaust the partnership assets of such partnership before executing upon the assets of such general partner in satisfaction of the obligations evidenced hereby or by any other document, instrument or agreement entered into by such partnership in connection with the loan evidenced by this Note, but may execute upon such general partner's assets prior to, at the same time as, or after executing upon the partnership assets of such partnership. Each such general partner shall be jointly and severally liable for such obligations with all other persons and entities liable therefor.

(g) If Lender at any time discovers that this Note or any of the Security Documents contains any error that was caused by a clerical mistake, calculation error, computer error, printing error or similar error, Borrower shall, upon demand by Lender re-execute any such documents as are necessary or appropriate to correct any such error and Lender shall have no liability to Borrower or any other person or entity as a result of such error. If this Note or any of the Security Documents are lost, stolen, mutilated or destroyed and Lender delivers to Borrower an indemnification agreement reasonably indemnifying Borrower against any loss or liability resulting therefrom, Borrower will execute and deliver to Lender a replacement thereof in form and content identical to the original document, which will have the effect of the original for all purposes.

DATED as of the day and year first above written.

Mount Prospect Group LLC, a New Jersey limited liability company

By: Ben Weinfeld, Managing Member

Loan No.: 770153799

## PREPAYMENT ADDENDUM TO PROMISSORY NOTE
### (5-5-4-4-3-2-1 Prepayment Premium)

This Addendum is attached to, incorporated into and forms an integral part of, the Promissory Note dated July 9, 2007 made by the undersigned in favor of Washington Mutual Bank, a federal association, as if the following terms and provisions were set forth in full in the body thereof:

1. **Prepayment During First Seven Loan Years.** Borrower may, upon 30 days' prior written notice to Lender, prepay its obligation under this Note in full or in part during the first seven Loan Years (as defined below), but only upon payment of a prepayment premium (the "Prepayment Premium") as follows: (a) during the first and second Loan Years, the Prepayment Premium will be 5.00% of the amount prepaid; (b) during the third and fourth Loan Years, the Prepayment Premium will be 4.00% of the amount prepaid; (c) during the fifth Loan Year, the Prepayment Premium will be 3.00% of the amount prepaid; (d) during the sixth Loan Year, the Prepayment Premium will be 2.00% of the amount prepaid; and (e) during the seventh Loan Year, the Prepayment Premium will be 1.00% of the amount prepaid. As used herein, "Loan Year" shall mean each successive twelve-month period commencing with the first day of the calendar month immediately preceding the calendar month in which the Initial Monthly Payment Date occurs; provided, however, that the first Loan Year shall also include any period of time between the date of this Note and such day.

2. **Prepayment After First Seven Loan Years.** If the Maturity Date is after the end of the seventh Loan Year, then after the end of the seventh Loan Year, Borrower may, upon 30 days' prior written notice to Lender, prepay its obligation under this Note in full or in part without payment of a Prepayment Premium.

3. **Provisions Applicable to All Prepayments.** Borrower expressly waives any right to prepay this Note except as provided in this Addendum. Therefore, if the maturity of this Note is accelerated for any reason, including, without limitation, the occurrence of any Event of Default, including without limitation an Event of Default under Section 4.13 of the Security Instrument, then any subsequent tender of payment of this Note, including any redemption following foreclosure of the Security Instrument, shall constitute an evasion of the restrictions on prepayment set forth herein and shall be deemed a voluntary prepayment. Accordingly, Lender may impose as a condition to accepting any such tender, and may bid at any sheriff's or trustee's sale under the Security Instrument, and/or include in any complaint for judicial foreclosure or any claim in bankruptcy, as part of the indebtedness evidenced by this Note and secured by the Security Instrument, the Prepayment Premium that would have otherwise been payable hereunder for prepayment of this Note occurring on the date of such acceleration. The Prepayment Premium will not be payable for prepayment of this Note made with insurance or condemnation proceeds if Lender requires those proceeds to be applied to payment of this Note pursuant to the terms of the Security Instrument. Notwithstanding the foregoing, if an Event of Default exists on the date of the applicable casualty or condemnation, the Prepayment Premium will be payable. The Prepayment Premium will be payable with respect to any other prepayment made from any collateral for this Note. No partial prepayment of this Note shall change the date or amount of any subsequent monthly payment required under the terms of this Note prior to payment in full of all amounts owing under this Note unless otherwise agreed in writing by Lender in its sole discretion.

Acceptance by Lender of any one or more prepayments without concurrent payment of any applicable Prepayment Premium or other amount provided for above will not constitute a waiver of Lender's right to require payment of any Prepayment Premium or other amount provided for above.

Borrower acknowledges that: (a) it is a knowledgeable real estate investor, (b) it fully understands the effect of the waivers set forth in this Addendum, (c) the making of the loan evidenced by

Loan No.: 770153799

this Note at the interest rates set forth in this Note is sufficient consideration for such waivers, and (d) Lender would not make the loan evidenced by this Note without such waivers.

Borrower acknowledges that any statement made by Lender setting forth the amount of the Prepayment Premium shall only be binding upon Lender if such statement is made in writing and that the amount of the Prepayment Premium set forth in such statement is subject to change and is valid only for the date of such statement.

DATED as of the date of the Note to which this Addendum is attached.

Mount Prospect Group, LLC, a New Jersey limited liability company

By: Ben Weinfeld, Managing Member

Loan No.: 770153799

## NONRECOURSE/LIMITED LIABILITY ADDENDUM TO PROMISSORY NOTE

This Addendum is attached to, incorporated into and forms an integral part of, the Promissory Note dated July 9, 2007, made by the undersigned in favor of Washington Mutual Bank, a federal association, as if the following terms and provisions were set forth in full in the body thereof. Capitalized terms used in this Addendum and not otherwise defined shall have the meanings given to those terms in the main body of this Note.

1. Any other provision of this Note or the Security Documents seemingly to the contrary notwithstanding, it is understood and agreed that, except as provided in this Addendum, the Property shall be the sole recourse of Lender in the event of an Event of Default (as defined in the Security Instrument) and that the liability of Borrower (and, if Borrower is a partnership, its partners) for any amounts due under this Note and/or under the Security Documents is limited to the interest of Borrower or its partners in the Property.

2. Lender may join Borrower (and, if Borrower is a partnership, its partners) as defendants in any legal action it undertakes to enforce its rights and remedies under this Note or under any of the Security Documents, provided that except as otherwise provided in the immediately succeeding paragraph, any judgment in such action may be satisfied by recourse only to the Property and not by recourse directly to Borrower or its partners or by execution on other property or assets of Borrower or its partners.

3. The foregoing notwithstanding, Lender shall have full recourse against Borrower (and, if Borrower is a partnership, its general partners) and such general partners shall be jointly and severally liable with Borrower and with one another for the full payment of: (i) the amount of any income, proceeds or profits (including rents) of the Property and any funds constituting a part of the Property that are, at the time of receipt, required for the payment of operating expenses for the Property (including the establishment of a reasonable reserve for this purpose) and/or the payment of amounts that are then due and payable under this Note and that are not so used; (ii) any condemnation or insurance proceeds, or other similar funds or payments attributable to the Property, that under the terms of the Security Documents should have been paid to Lender but that have not been so paid to Lender; (iii) any tenant security deposits, advances or prepaid rents, or other similar sums that have been paid to Borrower or held for the account of Borrower by any other person or entity in connection with the operation of the Property and that have not either been applied or refunded in accordance with the relevant lease or been paid over to Lender; (iv) the amount of any loss suffered by Lender as a result of misrepresentations or fraud by or on behalf of Borrower in connection with the loan evidenced by this Note; (v) the amount of any loss suffered by Lender as a result of waste, gross mismanagement or other actions by or permitted by Borrower that have resulted in a diminution in the value of the Property; (vi) the amount of any loss suffered by Lender as a result of violations of any governmental statute, rule or regulation applicable to the Property, but specifically excluding any loss suffered by Lender arising directly or indirectly from the presence or release of any hazardous or toxic substance, material or waste on the Property or Costs (as defined in the separate certificate and indemnity agreement regarding hazardous substances of even date herewith (the "Indemnity Agreement") executed and delivered by Borrower to Lender); (vii) the amount of any loss suffered by Lender as a result of any Unconsented Transfer (as defined in the Security Instrument) or as a result of any attempt by or on behalf of Borrower to hinder, delay or defeat Lender's realization on its security for this Note after the occurrence and during the continuance of an Event of Default (including without limitation the filing of any bankruptcy or insolvency proceeding or action to enjoin foreclosure); (viii) interest on the amounts described in clauses (i) through (ix) of this paragraph at the Default Rate; and (ix) attorneys' fees and other costs incurred by Lender in collecting any of the foregoing.

Loan No.: 770153799

4. In addition, nothing contained in this Addendum shall: (i) be deemed to be a release or impairment of the lien created by the Security Documents; or (ii) limit or otherwise prejudice in any way the rights of Lender to enforce any of its rights and remedies under any of the Security Documents, the Indemnity Agreement or any guaranty of the indebtedness evidenced by this Note.

5. The provisions of this Addendum are personal to Borrower and transferees of the Property under Permitted Transfers (as defined in the Security Instrument) only, are not transferable or assignable to any other person or entity, and are inapplicable to any other successor or transferee of Borrower as vested or beneficial owner of the Property, whether such other successor or transferee assumes or takes title subject to the Security Documents. As to any such other successor or transferee, this Note shall be fully recourse as if this Addendum were not attached thereto.

DATED as of the date of the Note to which this Addendum is attached.

Mount Prospect Group LLC, a New Jersey limited liability company

_____
By: Ben Weinfeld, Managing Member