**Neiger LLP**
317 Madison Avenue, 21st Floor
New York, New York 10017
Tel:     212-267-7342
Fax:    212-918-3427
Edward E. Neiger, Esq.

*Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                          Chapter 11

MOUNT PROSPECT GROUP, LLC,                           Case No. 10-15541 (SCC)


                    Debtor.
-----------------------------------------------------------x

**DEBTOR'S VERIFIED OMNIBUS OBJECTION TO (A) MOTION OF SLC HOLDINGS, LLC FOR ENTRY OF AN ORDER (I) PURSUANT TO 11 U.S.C. § 1112(b) DISMISSING THE DEBTOR'S BANKRUPTCY CASE OR ALTERNATIVELY, (II) PURSUANT TO 11 U.S.C. § 362(d) GRANTING SLC HOLDINGS RELIEF FROM THE AUTOMATIC STAY AND (B) MEMORANDUM OF LAW OF THE UNITED STATES TRUSTEE IN SUPPORT OF MOTION FOR AN ORDER TO DISMISS THIS CHAPTER 11 CASE, OR, ALTERNATIVELY TO CONVERT THIS CHAPTER 11 <u>CASE TO A CHAPTER 7 CASE</u>**

TO:    THE HONORABLE SHELLEY C. CHAPMAN,
           UNITED STATES BANKRUPTCY JUDGE

Mount Prospect Group, LLC, the debtor and debtor in possession herein (the "Debtor"), by and through its proposed counsel, Neiger LLP, as and for its verified objection (the "Objection") to the *Motion of SLC Holdings, LLC for an Order (I) pursuant to 11 U.S.C. § 1112(b) Dismissing the Debtor's Bankruptcy Case or Alternatively, (II) pursuant to 11 U.S.C. § 362(d) Granting SLC Holdings Relief from Automatic Stay* (the "SLC Motion") and *Memorandum of Law of the United States Trustee in Support of Motion for an Order to Dismiss*

*this Chapter 11 Case, or, Alternatively to Convert this Chapter 11 Case to a Chapter 7 Case* (the "UST Motion," and together with the SLC Motion, the "Motions to Dismiss"), respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtor filed its chapter 11 case due to financial hardship with the intention to reorganize in the most expeditious manner possible. The Motions to Dismiss should be denied because the Debtor intends to reorganize and there is a reasonable likelihood that the Debtor will emerge from bankruptcy. Thus, cause does not exist to dismiss or convert this case under section 1112(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"). In addition, the interest of SLC Holdings, LLC ("SLC") is adequately protected and cause does not exist to grant SLC relief from the automatic stay at this juncture of the case.[1]

## SUMMARY OF ARGUMENT

2. As set forth more fully below, the law and equitable considerations militate in favor of denying dismissal of this case for, among other things, the following reasons:

   i. This chapter 11 case was filed in good faith with the primary goal of affecting a reorganization and the fact that the Debtor has a reasonable likelihood of reorganization weighs against any alleged indicia of a bad faith filing.
   ii. The Debtor is actively exploring various reorganization options, including, re-financing its secured debt, seeking an equity infusion and marketing its property for sale.
   iii. The Debtor's rent is property of its estate pursuant to section 541(a) of the Bankruptcy Code.

---

[1] Concurrently with the Objection, the Debtor is filing an emergency motion for a stay and reconsideration of the *Order Granting Immediate Relief from the Automatic Stay and 11 U.S.C. § 543(d) so as to Restore the Pre-Petition Receiver/Custodian Appointed by the Superior Court of New Jersey, Chancery Division and to Have the Receiver Continue During these Chapter 11 Proceedings to Manage the Real Property Owned by the Debtor.*

  iv. The Debtor intends to investigate the validity of SLC's alleged security interest.

  v. The Debtor intends on filing operating reports and complying with the Bankrupcy Code and the Federal Rules of Bankruptcy Procedure and should be afforded a second chance and a fresh start which is consistent with the intent and purpose of the Bankruptcy Code.

## BACKGROUND

3. The Debtor is the owner of certain real property located at 445-449 Mount Prospect Avenue, Newark, New Jersey (the "Property").

4. On July 9, 2007, the Debtor entered into a loan transaction with Washington Mutual Bank ("WAMU") in an original principal amount of $2,662,500. As security for the loan transaction, the Debtor executed a mortgage (the "Mortgage") against the Property in favor of WAMU.

5. About January, 2009, the Debtor began experiencing financial difficulties. Several factors contributed to the Debtor's financial difficulties, including, but not limited to, unanticipated increased repair and maintenance expenses. As a result of the financial difficulties faced by the Debtor, the Debtor fell behind on its mortgage payments.

6. In or about May, 2009, JP Morgan Chase ("JP Morgan"), the alleged successor-in-interest to WAMU, initiated a foreclosure action (the "Foreclosure Action") in the Superior Court of New Jersey, Essex County, Chancery Division (the "State Court").

7. During the course of the Foreclosure Action, SLC allegedly obtained an assignment of, among other things, the Mortgage and JP Morgan's claim in the Foreclosure Action.

8. On or about October 18, 2010, the State Court entered an order appointing a receiver for the Property (the "Receiver Order").

9. Subsequent to October 20, 2010, the Debtor was, for the first time, notified of the entry of the Receiver Order.

10. The Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code on October 22, 2010 (the "Petition Date"). The Debtor operates its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11. On November 18, 2010, SLC filed the SLC Motion alleging that the Debtor filed its bankruptcy case in bad faith. SLC has not filed a certificate or affidavit of service indicating whether it made any attempt to serve the Debtor with the SLC Motion.

12. On December 1, 2010, the Office of the United States Trustee filed the UST Motion seeking dismissal or conversion of this case to a case under chapter 7 of the Bankruptcy Code.

13. On December 10, 2010, the Debtor's principal engaged Neiger LLP to serve as the Debtor's bankruptcy counsel, subject to Court approval of its retention pursuant to sections 327 and 330 of the Bankruptcy Code.

## LEGAL ARGUMENT

**I. The Debtor's Chapter 11 Case Was Filed In Good Faith
And It Should Be Allowed To Reorganize**

**A. Alleged Indicia of Bad Faith Does Not Require Dismissal of this Chapter 11 Case Because the Debtor Could Reorganize**

14. As set forth more fully below, the Debtor filed its bankruptcy case in good faith. However, this Court need not focus on the Debtor's intent because the Debtor could reorganize. Courts in this and other circuits have a history of affording debtors the opportunity to obtain a fresh start and reorganize in bankruptcy, notwithstanding indicia of bad faith. The Debtor respectfully asks this Court to afford it with the same opportunity.

4

15. Assuming, *arguendo*, that indicia of a bad faith filing is present in this case, dismissal is nevertheless not warranted because the Debtor has a reasonable prospect of reorganizing. While courts look at a variety of factors in determining whether a bankruptcy case was filed in good faith, including whether (i) a debtor has only one primary asset, (ii) the number of unsecured creditors that a debtor has, and (iii) a debtor's cash flow, one rule remains consistent in case after case: where a debtor could reorganize, notwithstanding indicia of bad faith, courts in the Second Circuit allow it to reorganize. *In re General Growth Properties, Inc.*, 409 B.R. 43 (Bankr. S.D.N.Y. 2009) (denying motion to dismiss cases as bad faith filings and finding that debtor entities were not required to prove a confirmable plan or to negotiate with lenders prior to seeking bankruptcy protection); *In re 68 W. 127th Street, LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002) (refusing to dismiss the debtor's case because of a reasonable likelihood of reorganizing, even though the debtor's sole business purpose was to rehabilitate a derelict building and where it had few creditors and no cash flow); *In re RCM Global LongTerm Capital Appreciation Fund, Ltd.*, 200 B.R. 514 (Bankr. S.D.N.Y. 1996) (Court denied motion to dismiss case where debtor had only eight unsecured creditors, no employees and no leases because the Second Circuit requires a finding of "**both** objective futility of the reorganization process **and** subjective bad faith in filing the petition") (emphasis original); *In re Walden Ridge Development LLC*, 292 B.R. 58 (Bankr. D.N.J. 2003) (Court denied motion to dismiss for bad faith where debtor had no real property, no personal property, no bank accounts or checks, and whose only asset was a purchase contract because it intended to reorganize by selling a purchase contract); *In re PPI Enterprises (US), Inc.*, 228 B.R. 339 (D. Del. 1998) (denying motion to dismiss case where debtor had few assets, no ongoing business, one employee and few non-insider creditors,

filed on eve of the issuance of a judgment against the debtor because debtor could file a plan of liquidation).

16. The Debtor in this case has at least a reasonable likelihood of reorganization as the debtors in the cases cited above. As set forth more fully below, the Debtor is currently exploring various reorganization strategies by actively seeking to refinance its secured debt, exploring a potential equity infusion and marketing the Property for sale. Therefore, this Court should not dismiss this case and afford the Debtor the opportunity to reorganize its business in chapter 11.

**B. The Debtor Filed its Chapter 11 Case in Good Faith Because it Intends to Reorganize**

17. The Debtor filed its chapter 11 case in good faith with the intention of reorganizing and there is a reasonable likelihood that the Debtor could reorganize and emerge from bankruptcy. *See In re 68 W. 127th Street, LLC*, 285 B.R. at 846. As the *68 W. 127th Street* court recognized, "[t]he critical test of a debtor's bad faith remains whether on the filing date, there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy." *Id.*, *citing C-TC 9th Avenue Partnership v. Norton Company (In re C-TC 9th Avenue Partnership)*, 113 F.3d 1304 (2d Cir. 1997) and *Baker v. Latham Sparrowbush Associates (In re Cohoes Industrial Terminal, Inc.)*, 931 F.2d 222 (2d Cir. 1991).

18. In *68 West 127 Street*, the debtor filed its bankruptcy petition in the morning of the day on which its sole asset, an empty residential building located in Harlem, was scheduled to be sold at judicial foreclosure. *Id.* at 839. The debtor's secured lender, like SLC here, moved for relief from the automatic stay in order to proceed with the foreclosure sale, contending that it

was entitled to relief from the automatic stay for cause under section 362(d)(1) of the Bankruptcy Code because the debtor filed its bankruptcy case in bad faith. *Id.*

19. The *68 W. 127th Street* court cautioned against applying the *C-TC 9th Avenue Partnership* bad faith factors mechanically. *Id.* at 844. The court reasoned that to do so would automatically doom nearly every single asset case, *ab initio*. *Id. citing In re Willows of Coventry Ltd. Partnership*, 154 B.R. 959, 967 (Bankr. N.D. Ind. 1993). The *68 W. 127th Street* court stated: "[w]hen a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case." *Id.* The court further held that resorting to bankruptcy to stave off foreclosure is consistent with the overreaching bankruptcy goals of preserving going concern and maximizing value. *Id.* at 845. Thus, the *68 W. 127th Street* court concluded that the debtor established that it was using the Bankruptcy Code for the valid purpose of confirming a chapter 11 plan and that a reasonable possibility of a successful reorganization within a reasonable time existed and denied the secured lender's motion for stay relief. *Id.* at 843.

20. In the course of examining whether the case was filed in bad faith, the *68 W. 127th Street* court noted that the relevant factors indicating bad faith for purposes of stay relief are substantively the same as in the context of a motion to dismiss a case for cause under section 1112(b). *Id. citing In re AMC Realty Corp.*, 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001). Thus, the holding of *68 W. 127th Street* applies to both SLC's claims under sections 1112(b) and 362(d)(1) of the Bankruptcy Code.

21. As set forth in greater detail below, like the case of *68 W. 127th Street*, which involved an apartment complex that did not generate significant income, the Debtor here has the

right to seek bankruptcy protection because it has a reasonable likelihood of achieving a successful reorganization; whether by (i) refinancing its debt, (ii) funding a plan through rents and an equity infusion or (iii) marketing the Property for sale pursuant to section 363 of the Bankruptcy Code or pursuant to a plan.

### i. The Debtor is Actively Exploring Various Reorganization Options

22. The Debtor has a strong chance of reorganizing and should be permitted to propose a plan or begin making payments to SLC (to the extent its alleged security interest in the Debtor's assets is valid under non-bankruptcy law and is properly perfected) in accordance with the timeline afforded to single asset real estate debtors under section 362(d)(3) of the Bankruptcy Code.

23. The Debtor is actively exploring refinancing and equity infusion options that would allow the Debtor to file a plan of reorganization. The Debtor intends to simultaneously market the Property for sale under section 363 of the Bankruptcy Code or pursuant to a plan. The Debtor has recently retained counsel and intends to fully comply with the requirements of the Bankruptcy Code. Further, because of the Debtor's principals' intimate familiarity with the Property, its tenants and location, the Debtor is in the best position to operate its business in chapter 11, manage the Property, explore refinancing and equity infusion options and market the Property for sale.

### ii. The Debtor Can Fund an Effective Plan of Reorganization and/or Make Adequate Protection Payments to SLC, if Necessary

24. The Debtor will be able to utilize the post-petition rents derived from the Property to fund a plan of reorganization and/or make adequate protection payments to SLC, to the extent such payments are necessary and required. As discussed in greater detail below, rents are expressly included in property of the bankruptcy estate pursuant to section 541(a)(6). In

addition, the Debtor intends to fully analyze the validity of SLC's alleged security interest. Accordingly, granting SLC relief from stay to foreclose on the Property and/or effectuate the Receivership Order is improper at this juncture in the Debtor's case.

> **a. Section 541 of the Bankruptcy Code Expressly Controls the Designation of Rents as Property of the Estate.**

25. SLC conveniently overlooks that section 541 of the Bankruptcy Code expressly provides that rents and proceeds of property of the estate, such as the Property, are included in property of the bankruptcy estate and are therefore available for use by the Debtor in administering its bankruptcy case.

26. Section 541 of the Bankruptcy Code provides in relevant part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case.
> ...
> (6) Proceeds, product, offspring, *rents*, or profits *of or from property of the estate*, except as such are earnings from services performed by an individual debtor after the commencement of the case.

11 U.S.C. § 541 (emphasis added).

27. Applying this federal statutory provision in a straightforward manner, the Property was unquestionably property of the estate as of the Petition Date and therefore, property of the estate under section 541(a)(1) of the Bankruptcy Code. Pursuant to section 541(a)(6) of the Bankruptcy Code, rents derived from the Property post-petition, are specifically singled out as being property of the estate. It is noteworthy that the section 541(a)(6) analysis does not require that the rents be interests of the Debtor as of the commencement of the case. Accordingly, in a worst case scenario, even if an absolute assignment of the rents took place

prior to the bankruptcy filing, all rents collected post-petition are still property of the estate, as defined in section 541(a)(6) of the Bankruptcy Code.

28. While there is limited case law interpreting the controlling effect of section 541(a)(6) on the assignment of rents, at least three courts have recently found that federal law, rather than state law, controls the issue whether post-petition rents are estate property. *In re Bryant Manor LLC,* 422 B.R. 278 (Bankr. D. Kan. 2010); *In re Amaravathi Ltd. P'ship,* 416 B.R. 618 (Bankr. S.D. Tex. 2009); *In re Las Torres Development LLC, et al.,* 2009 WL 09-33872 (Bankr. E.D. Tex. July 22, 2009). As set forth more fully below, these courts held that even where there was an absolute assignment of rents under state law, the rents were property of the bankruptcy estate.

29. SLC primarily relies upon *First Fidelity Bank N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P)*, 59 F.3d 423 (3d Cir. 1995) and its progeny as support for its position that the rents are not property of the Debtor's estate. However, these decisions merely substantively analyze whether rents are property of the estate under section 541(a)(1) of the Bankruptcy Code, largely ignoring section 541(a)(6) of the Bankruptcy Code. To overcome the language of section 541(a)(6) of the Bankruptcy Code, SLC is improperly requesting that the Court ignore and override express and controlling language set forth by Congress in section 541(a), which clearly establishes that the rents are property of the estate. *See Butner v. U.S.*, 440 U.S. 48 n.9 (1979) ("The Federal Constitution, Article I, § 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended.").

10

30. As the *Amaravathi* court noted, the Supreme court in *Butner* left no doubt that federal bankruptcy law would trump state law if Congress were to enact a statute defining rights to post-petition rents. Relying on *Butner*, the *Amaravathi* court found that enactment of section 541(a)(6) of the Bankruptcy Code evidenced Congress' unambiguous intent to supersede state property law and make post-petition rents estate property. *In re Amaravathi Ltd. Partnership,* 416 B.R. at 625. Accordingly, the *Amaravathi* court held that section 541(a)(6) "*mandates* that rents generated from property of the estate are included within the bankruptcy estate." *Id.* at 638 (emphasis added).

31. Similarly, the *Bryant Manor* court held that even if an assignment of rents constitutes an absolute transfer of rights divesting the debtor's ownership interest in such rents under applicable non-bankruptcy law, section 541(a)(6) of the Bankruptcy Code "requires" the inclusion of rents in the bankruptcy estate as a matter of federal law. *In re Bryant Manor LLC,* 422 B.R. at 287-88. The *Bryant Manor* debtor, like the Debtor here, operated a single apartment complex. The court extensively cited both *Butner* and *Amaravathi* and found that all rents generated by the apartment complex were property of the bankruptcy estate pursuant to section 541(a)(6) of the Bankruptcy Code, notwithstanding a proper absolute assignment of rents. *Id.* at 288-89.

32. Reaching the same conclusion, the *Las Torres Development* court held that a retail shopping center debtor's interest in post-petition rents generated by estate property is property of the estate pursuant to section 541(a)(6) of the Bankruptcy Code, even though the debtor had executed an absolute assignment of rents pre-petition. *In re Las Torres Development LLC, et al.,* 2009 WL 09-33872 at *13.[2]

---

[2] In addition to the above recent bankruptcy court decisions, several prominent legal scholars have called into doubt and criticized the holding of *Jason Realty* as elevating form over substance and serving

11

33. Just like the single asset real estate debtors in *Amaravathi*, *Bryant Manor* and *Las Torres Development*, the Debtor operates rental property as its primary asset. Just as the courts unequivocally held in those cases, the Debtor is also entitled to utilize the chapter 11 process to obtain a breathing spell to rehabilitate and reorganize its business. The Debtor may use property of the estate under section 541(a) of the Bankruptcy Code, including the rents derived from the Property to, among other things, fund a chapter 11 plan or make adequate protection payments if required to do so.

### b. SLC Has Not Demonstrated that it is the Proper Holder of the Mortgage

34. Granting the SLC Motion at this juncture is premature as the Debtor has not had a full opportunity to determine the extent, validity and perfection of SLC's <u>alleged</u> lien against the Debtor's property. SLC merely alleged that it is the proper holder of the Mortgage given by the Debtor to WAMU. It is not clear whether (i) SLC is in possession of the original Mortgage and related loan documents or (ii) whether the transfers from (a) WAMU to JP Morgan and (b) JP Morgan to SLC were properly affected and recorded. *See, e.g., In re Mims*, 438 B.R. 52 (Bankr. S.D.N.Y. 2010) (denying motion seeking relief from stay to proceed with foreclosure where lender failed to prove that it was assigned the note and mortgage); *Bank of N.Y. v. Raftogianis*, 2010 N.J. Super. Unpub. Lexis 2316 1, 54 (Ch. Div. 2010) (dismissing foreclosure complaint where bank could not prove it was in possession of the original note and mortgage); *In re Foreclosure Cases*, 521 F. Supp. 2d 650 (N.D. Ohio 2007) (to establish standing, a mortgagee

---

to create confusion and inconsistencies in single asset real estate bankruptcy cases. *See, e.g.,* Ancel, J., Graham J., & Johns, M., *Post-Petition Rents as Property of the Estate: State of Federal Law?*, 29-6 ABIJ 44 (July 2010); Forrester, J., *Still Crazy After All These Years: the Absolute Assignment of Rents in Mortgage Loan Transactions*, 59 Fla. L. Rev. 487 (July 2007). Based on the foregoing and the fact that *Jason Realty* does not constitute binding precedent before this Court, the Debtor respectfully suggests that it should not be determinative in this case. Furthermore, *Jason Realty* is factually distinguishable from the case at bar because, among other things, unlike *Jason Realty* where the assignment of rents was contained in a separate executed instrument, the assignment of rents provision in this case is merely a clause contained within the Mortgage. *See In re Jason Realty, L.P.*, 59 F.3d at 428.

must demonstrate that it was the holder of the note and mortgage at the time action was initiated). Therefore, until SLC proves that it is secured, this Court should not consider its requests for dismissal of this case or for stay relief.

## II. **The Debtor Should Be Given An Opportunity To Reorganize**

35. It is well established that "the purpose of the protection provided by Chapter 11 is to give the debtor a breathing spell, an opportunity to rehabilitate its business and to enable the debtor to generate revenue." *See In re Johns-Manville Corp.*, 801 F.2d 60, 62 (2d Cir. 1986). The Debtor believes it has established that it has a reasonable likelihood of reorganization and should be given the opportunity to reorganize.

36. Contrary to SLC's assertions, SLC has failed to demonstrate that the Debtor lacks equity in the Property, that the Property is diminishing in value, or that the Debtor is unable to provide SLC with adequate protection (should SLC be entitled to such adequate protection).

37. A certificate evidencing that the Property is adequately insured is attached hereto as Exhibit A. The Debtor intends to produce records of expenses that it paid in connection with the Property during the last year. The Debtor further questions the reliability of the appraisal provided by SLC (the "Appraisal"), given that the appraiser only evaluated the exterior of the Property. A copy of the Appraisal is attached hereto as Exhibit B.

38. The Debtor further intends to promptly file an application for use of cash collateral with this Court. It is the Debtor's position that it will be able to establish that SLC's interest in the Property, if any, is adequately protected. *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (The determination of adequate protection is a fact-specific inquiry. "Its application is left to the vagaries of each case … but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process."); *In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) (Adequate protection is not expressly

defined. The statute confers upon "the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved.").

39. Even if the Debtor lacks equity in the Property it will be able to provide adequate protection in the form of payments or replacement liens. *In re Abdulla*, 2009 Bankr. LEXIS 642 1, 6-8 (Bankr. D. Mass. 2009). As such the Debtor will be able to demonstrate that SLC's interest in the Property (if any) is adequately protected.

## CONCLUSION

40. The Debtor respectfully asserts that it has demonstrated that its chapter 11 case was filed in good faith. The Debtor filed its bankruptcy case with the primary goal of reorganizing its business and is actively exploring the potential reorganization options that are available to it. To that end, the Debtor is, among other things, exploring (i) refinancing options, (ii) equity infusions, and (iii) marketing the Property for sale. Courts in this and other circuits have a long tradition of affording debtors the opportunity to reorganize and obtain a fresh start in bankruptcy. The Debtor respectfully asks this Court to afford it the same opportunity.

**WHEREFORE**, the Debtor respectfully requests that the Motions to Dismiss be denied in all respects and that the Debtor be granted such additional relief as is just and appropriate.

Dated: December 13, 2010
    New York, New York       */s/ Edward E. Neiger*
                                          **Neiger LLP**
                                          By: Edward E. Neiger, Esq.
                                          317 Madison Avenue, 21st Floor
                                          New York, New York 10017
                                          Tel:    212-267-7342
                                          Fax:   212-918-3427
                                          *Proposed Counsel to the Debtor*

**VERIFICATION**

I, Eli Weinfeld, a managing member of Mount Prospect Group, LLC, hereby verify under penalty of perjury, under the laws of the United States of America, that the above statements are true and correct, according to the best of my current information, knowledge, and belief.


Dated: New York, New York
       December 13, 2010

>                        */s/ Eli Weinfeld*
>                            Eli Weinfeld