UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

IN RE                                               :

                                                    :  Case No. 10-15541-SSC

MOUNT PROSPECT GROUP LLC,                           :

                                                    :  (Chapter 11)

                        Debtor.                     :

--------------------------------------------------------------------X


## PLAN OF REORGANIZATION


Dated: January 11, 2011
    New York, New York                 Edward E. Neiger, Esq.
                                        Neiger, LLP
                                        317 Madison Avenue, 21st Floor
                                        New York, New York 10017
                                        Telephone: (212) 267-7342
                                        Facsimile: (212) 918-3427

**TABLE OF CONTENTS**

**PAGE NO.**

**ARTICLE 1. DEFINITIONS** .................................................................................. 2

**ARTICLE 2. CLASSIFICATION OF CLAIMS** .................................................... 7

   2.1    Classified Claims ................................................................................ 7

   2.2    Classification.......................................................................................... 8

   2.3    Resolution of Disputes ......................................................................... 8

**ARTICLE 3. TREATMENT OF CLAIMS** ............................................................ 8

   3.1    Unclassified Claims ............................................................................. 8

   3.2    Classified Claims ............................................................................... 10

**ARTICLE 4. PAYMENT OF CLAIMS** .............................................................. 11

   4.1    Payment of Allowed Claims .............................................................. 11

   4.2    Fee Applications by Professionals .................................................... 13

**ARTICLE 5. PLAN IMPLEMENTATION ISSUES** ........................................ 13

   5.1    Conditions to the Effective Date....................................................... 13

   5.2    Period Prior to Effective Date........................................................... 13

   5.3    Consummation of Plan....................................................................... 14

   5.4    Means for Implementation of Plan .................................................... 14

   5.5    Vesting of Assets in Post-Confirmation Debtor ............................... 15

   5.6    Management of Reorganized Debtor……………………………………15

   5.7    Confirmation Order ............................................................................ 15

   5.8    Assumption and/or Rejection of Executory Contracts...................... 15

   5.9    Full and Final Satisfaction ................................................................ 16

   5.10  Exculpation ....................................................................................... 17

**ARTICLE 6. PRESERVATION OF CLAIMS AND CAUSES OF ACTION**
           **FOR THE ESTATE** ............................................................................ 17

**ARTICLE 7. MISCELLANEOUS** ........................................................................... 17

7.1    Bakruptcy Fees ............................................................................................. 18

7.2    Defaults ......................................................................................................... 18

7.3    No Injunctive Relief ................................................................................... 19

7.4    No Admissions ............................................................................................. 19

7.5    Time ............................................................................................................... 19

7.6    Extension of Time ....................................................................................... 19

7.7    Conflict ......................................................................................................... 19

7.8    Reservation of Rights ................................................................................. 20

**ARTICLE 8. RETENTION OF JURISDICTION** .................................................. 20

**ARTICLE 9. AMENDMENT AND INTERPRETATION OF THIS PLAN** ......... 22

9.1    Modification of the Plan ............................................................................. 22

9.2    Headings ........................................................................................................ 22

9.3    Severability ................................................................................................... 22

9.4    Successors and Assigns ............................................................................... 22

9.5    Rights if Plan is Not Confirmed ................................................................ 23

9.6    Internal References ...................................................................................... 23

## PLAN OF REORGANIZATION

Mount Prospect Group LLC, the within debtor and debtor in possession (the "Debtor"), hereby proposes the following Plan of Reorganization (the "Plan") pursuant to the provisions of chapter 11 of the Bankruptcy Code.

Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of the Debtor or any other party in interest and the Plan is subject to approval of the Bankruptcy Court and other customary conditions. The Plan is not an offer with respect to any securities.

YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THE PLAN FOR ANY PURPOSE PRIOR TO THE APPROVAL OF THE PLAN BY THE BANKRUPTCY COURT.

# ARTICLE 1

## DEFINITIONS

For the purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the meanings set forth in this section and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article 1, and any term used in this Plan which is not defined below, but which is defined in the Bankruptcy Code, shall have the meaning designated in the Bankruptcy Code:

1.1　　"Administrative Claim" means a Claim under sections 330, 331 or 503(b) of the Bankruptcy Code that is entitled to priority treatment under section 507(a)(1) of the Bankruptcy Code.

1.2　　"Administrative Period" means the period beginning on the Filing Date and ending on the Confirmation Date.

1.3　　"Adversary Proceeding" means any and all actions previously commenced, or to be commenced, by the Debtor to recover money or property on behalf of the Debtor's Estate.

1.4　　"Allowed Administrative Claim" means an Allowed Claim that is entitled to priority as an Administrative Claim.

1.5　　"Allowed Claim" means (1) any Claim listed on Debtor's Schedules filed in connection with its Reorganization Case which is not designated as unliquidated, contingent or disputed and/or, (2) any Claim against the Debtor which is designated as an Allowed Claim under the Plan and/or reduced to writing, consented to by the Debtor and liquidated in amount, which writing has been approved by a Final Order.

1.6　　"Allowed Priority Tax Claim" means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.7　　"Allowed Unsecured Claim" means any Unsecured Claim that is an Allowed Claim.

1.8　　"Apartment Buildings" means the apartment buildings located at 445-449 Mount Prospect Avenue, Newark, New Jersey 07104, and all improvements thereto.

1.9　　"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

1.10    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, New York, NY 10004-1408, having jurisdiction over the Debtor's Reorganization Case, or any such other Court as may hereafter exercise primary jurisdiction over the Debtor's Reorganization Case.

1.11    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States and prescribed by the Supreme Court of the United States, effective August 1, 1983, in accordance with the provisions of 28 U.S.C. § 2075, and all amendments thereto.

1.12    "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as that term is defined under Bankruptcy Rule 9006(a).

1.13    "Cash" or "$" means the lawful currency of the United States of America and its equivalents.

1.14    "Chase Bank" means JP Morgan Chase f/k/a Washington Mutual.

1.15    "Claim" as defined in section 101(5) of the Bankruptcy Code means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.16    "Claimant" means the holder of a Claim.

1.17    "Claims" means any group of Claims as classified in Article 2 of this Plan.

1.18    "Class" means each group or category of Claims as classified herein.

1.19    "Confirmation" means entry of a Final Order confirming the Plan in accordance with section 1129 of the Bankruptcy Code.

1.20    "Confirmation Date" means the date the Confirmation Order is entered on the Bankruptcy Court docket.

1.21    "Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to Sections 1128(a) and 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.  The Debtor will request that the Bankruptcy Court hold a combined Confirmation Hearing and hearing to approve the Disclosure Statement on February 9, 2011, at 10:00 a.m. (EST).

1.22    "Confirmation Order" means the order issued and entered confirming the Plan, pursuant to section 1129 of the Bankruptcy Code.

1.23    "Consummation of the Plan" means the date of closing the Exit Financing under the Plan.

1.24    "Cure Period" means the period of 30 days the Debtor has to cure any default in payments required under the Plan after a Claimant provides written notice to the Debtor and its attorneys of the default.

1.25    "Debtor" means Mount Prospect Group LLC, as debtor in possession in the Reorganization Case.

1.26    "Disclosure Statement" means the Disclosure Statement filed pursuant to section 1125 of the Bankruptcy Code dated January 11, 2011 filed by Debtor in connection with the Reorganization Case, and all exhibits in connection therewith and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

1.27    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with its Reorganization Cases, or any Claim against which an objection to the allowance thereof has been interposed and as to which such objection a Final Order has not been entered or any Claim against which the period for bringing such objection as provided hereunder has not expired.

1.28    "Disputed Claim Holder" means the holder of a Disputed Claim.

1.29    "Effective Date" means a Business Day selected by the Debtor, which is, unless the Confirmation Order directs otherwise, thirty (30) Business Days after the date on which each of the conditions to the Plan's Effective Date set forth herein has either been satisfied or waived in accordance with the Plan.

1.30    "Estate" means the estate created in the Reorganization Case pursuant to section 541 of the Bankruptcy Code.

1.31    "Exit Financing" means that certain unsecured loan in the approximate amount of $450,000.00, provided for in this Plan.

1.32    "Exhibits" means the exhibits filed in support of this Plan.

1.33    "Extension Period" means the additional ninety (90) days that the Cure Period shall be extended in the event of any act of terrorism or God which adversely impacts upon the ability of the Debtor or Reorganized Debtor to satisfy its payment obligation under the Plan.

1.34    "Filing Date" means October 22, 2010, the date of the commencement of the Debtor's Reorganization Case.

1.35    "Final Order" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Debtor's Reorganization Case, which order or judgment has not been reversed, stayed, modified or amended

1.36 "Holder" means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.37 "Mortgage" means that certain mortgage loan made by Chase Bank to the Debtor, which was evidenced by a promissory note in the original principal amount of $2,662,500.00.

1.38 "Person" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

1.39 "Plan" means this document entitled "Plan of Reorganization" dated January 11, 2011, and any Exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended from time to time by any duly authorized amendment or modification.

1.40 "Post-Confirmation Expenses" means all reasonable fees, expenses and disbursements of Professional Persons incurred after the Confirmation Date.

1.41 "Priority Tax Claim" means a Claim entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

1.42 "Professional Fees" means all allowances of compensation and reimbursement of expenses Allowed, or to be allowed, pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code, to any Professional Person retained pursuant to section 327 of the Bankruptcy Code.

1.43 "Professional Person" means Neiger LLP (counsel for the Debtor), which has sought or may seek to be compensated pursuant to sections 326, 327, 328, 330, 331, or 1103 of the Bankruptcy Code.

1.44 "Promissory Note" means the promissory note entered into by and between the Debtor and Chase Bank for the principal amount of $2,662,500.00, dated July 9, 2007, which Promissory Note was subsequently assigned to SLC.

1.45 "Plan Proponent" means the Debtor.

1.46 "Released Parties" means any the Debtor and its agents, officers, directors, shareholders, advisors, attorneys, and representatives.

1.47 "Reorganization Case" means the bankruptcy case of the Debtor designated as chapter Case 11 No. 10-15541 (SCC), commenced on the Filing Date by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code and ending upon the entry of a Final Order closing the Debtor's case.

1.48 "Reorganized Debtor" means the Debtor on and after the Effective Date.

1.49    "Schedules" mean the chapter 11 schedules filed with the Bankruptcy Court on October 22, 2010, as may be amended.

1.50    "SLC" means SLC Holdings, LLC, as assignee of Chase Bank, with its principal place of business located at 101 Eisenhower Parkway, Roseland, New Jersey 07068.

1.51    "Unclaimed Distributions" means those funds allocated under the Plan for payment to any holders of Allowed Claims which holders, after due diligence, the Debtor or its attorneys are unable to locate.

1.52    "Unsecured Claim" means any Claim which does not qualify as an Administrative Claim, the Priority Tax Claim, or the SLC Claim.

1.53    "Unsecured Creditor" means the holder of an Unsecured Claim.

A term used in this Plan and not defined herein or in the Bankruptcy Code shall have its common and ordinary meaning.  Any capitalized term used in this Plan that is not defined herein but that is defined and used in the Disclosure Statement has the meaning ascribed to that term in the Disclosure Statement; terms defined in the Bankruptcy Code or the Bankruptcy Rules shall have the definitions set forth therein.  Without limiting the preceding sentence, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neuter.

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.

The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in

any respect qualify, characterize or limit the generality of the class within which such things are included.

The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

Any and all Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed. All references to "the Plan" herein shall be construed, where applicable, to include references to this document and any amendments and exhibits hereto.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS

### 2.1 Classified Claims

The following is a designation of the Classes of Claims under the Plan. This classification of Claims is made for purposes of making distributions hereunder and for ease of administration hereof. All Claims except Administrative Claims and Priority Tax Claims are placed in the Classes described below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article 3, have not been classified and thus are excluded from the Classes described below.

A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied or dealt with prior to the Effective Date.

2.2 **Classification**

The following table designates the Classes of Claims against the Debtor, and specifies that the Classes are unimpaired by the Plan, and therefore deemed to accept the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | SLC Claim | No | No (Deemed to accept) |
| Class 2 | Allowed Unsecured Claims | No | No (Deemed to accept) |

The Classes of Claims are unimpaired and, therefore, deemed to have accepted the Plan and are not entitled to vote on the Plan under section 1126(f) of the Bankruptcy Code.

2.3 **Resolution of Disputes**

Disputes regarding the proper classification of any Claim shall be resolved pursuant to the procedures established by the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Bankruptcy Court and this Plan, and such resolution shall not be a condition precedent to Confirmation or Consummation of this Plan.

## ARTICLE 3

## TREATMENT OF CLAIMS

In addition to any waivers or releases of Claims or other causes of action provided for elsewhere in this Plan, Claims shall be treated as set forth below. Except as explicitly provided in this Plan, all distributions under this Plan shall be free and clear of all Claims, liens, security interests and encumbrances of any nature or kind whatsoever.

3.1 **Unclassified Claims**

3.1(a) Administrative Claims

Administrative Claims are not classified under the Plan. Administrative Claims are Claims against the Debtor for any costs or expenses of the Reorganization Case allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including all actual and necessary

expenses of preservation of the Debtor's Estate, Court fees and expenses and allowances of compensation for Professional Persons retained by the Debtor.

**All requests for payment of Administrative Claims that accrued during the Administrative Period shall be filed and served on the Debtor's Attorneys not later than 30 days after the Confirmation Date.**  Notwithstanding anything in the Plan to the contrary, objections to such requests shall be filed and served within 60 days after filing of each such request.  The Administrative Claims of Professional Persons retained pursuant to order of the Bankruptcy Court need not file a claim and are subject to Court approval after notice and hearing and shall be paid by the Debtor and/or the Reorganized Debtor on or before the Effective Date or as otherwise ordered by the Bankruptcy Court.  An application for Professional Fees may be filed as provided for in Article 4 below.

Except as specified above, all Allowed Administrative Claims shall receive Cash from the Reorganized Debtor in the amount of such Allowed Administrative Claim on the later of (i) the Effective Date or (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or at such other date and upon such other terms as may be agreed upon by the holder of the Allowed Administrative Claim and the Debtor or ordered by the Bankruptcy Court.

Notwithstanding the foregoing, (a) any Allowed Administrative Claim based on a liability incurred by the Debtor in the ordinary course of business during the Reorganization Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (b) any Allowed Administrative Claim may be paid on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor.

### 3.1(b)  Priority Tax Claims

Priority Tax Claims are not classified under the Plan.  The holders, if any, of Allowed Priority Tax Claims under section 507(a)(8) of the Bankruptcy Code shall be paid 100% of the amount of their Allowed Claims on the later of (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance thereof, in full at any time on or after the Effective Date without premium or penalty; and provided further, that no holder of an Allowed Priority Tax Claim shall be entitled to any payment on account of any pre-Effective Date interest arising after the Filing Date with respect to or in connection with such Allowed Claim.

Any liens held by the I.R.S., the New Jersey Department of Revenue or the Town of Newark shall continue after Confirmation under the Plan to the same extent and priority held as of the Filing Date.

### 3.2  **Classified Claims**

### 3.2(a)  SLC Claim

Class 1 includes the SLC Claim, which Claim is unimpaired under the Plan.  The holder of Class 1 Allowed Claim shall a cure payment of $419,408.00 provided for under the Promissory Note on the Effective Date of the Plan.  At that time, the terms of the Mortgage shall be reinstated, and any liens held by SLC shall continue after Confirmation under the Plan to the same extent and priority held as of the Filing Date.  The Reorganized Debtor shall retain the Apartment Buildings which secure such Claim.

3.2(b)   Class 2 – Unsecured Claims

Class 2 includes all Allowed Unsecured Claims, which Claims are unimpaired under the Plan.  Unless otherwise agreed to by the Debtor and such Claimant, Allowed Unsecured Claims shall be paid in full on the later of (i) the Effective Date or (ii) the date any such Claim becomes an Allowed Claim.

# ARTICLE 4

## PAYMENT OF CLAIMS

### 4.1     **Payment of Allowed Claims**

Payment is to be made only to those holders of Allowed Claims of the various Classes. The Debtor may pre-pay all or part of any class of obligations under the Plan without penalty, at any time.  Notwithstanding anything herein to the contrary, no Holder of any Claim will be entitled to a distribution in excess of 100% of the Allowed amount of its Claims.

### 4.1(a)   Objection to Claims

The Debtor may file objections to claims of record in order to correct erroneous or duplicative amounts or for any other reason that in its business judgment would be appropriate.

(i)      General Procedures:  Unless another date is provided for in this Plan or by the Bankruptcy Court, on or before the sixtieth (60th) day after the Confirmation Date, the Debtor and/or the Reorganized Debtor may file with the Bankruptcy Court objections to Claims, including objections to the amount and classification thereof, except Claims previously allowed by a Final Order, and shall serve a copy of such objection upon the holder of the Claim to which such objection pertains.  The resolution of any such objection shall be governed by the Bankruptcy Code, the Bankruptcy Rules and such provisions as may be established by the Bankruptcy Court, or by the procedural rules of the court in which such

objection is to be litigated.  Any Claim as to which an objection is not timely filed in accordance with the provisions of the Plan or orders of the Bankruptcy Court and to which the Debtor's time to interpose objection has expired, shall be an Allowed Claim, except that any Claim scheduled as disputed to which no proof of claim has been filed shall be deemed disallowed and is expunged.

(ii)    <u>Prosecution of Objections</u>:   Unless otherwise ordered by the Bankruptcy Court, the Debtor and/or the Reorganized Debtor shall litigate its objections to Claims to judgment or settlement, or withdraw the objection at its sole and absolute discretion.

4.1(b)  Setoffs

The Debtor shall have the right to setoff against any payment to be made pursuant to the Plan to a Claimant, claims of any nature whatsoever that the Debtor may have or have had, against the holder of such Claim.

4.1(c)  Unclaimed Cash

(i)    In the event any Claimant fails to claim any distribution within three months from the date of such distribution, by failing to present such distribution check for payment to the Debtor' bank, such Claimant shall forfeit all rights thereto.  Thereafter the distribution formerly available to the Claimant shall become the property of the Reorganized Debtor, and such Claimant shall have no further rights to share in any subsequent distributions which may be made.

(ii)    For purposes of mailing distribution checks, the Debtor may rely on the addresses for holders of Allowed Claims as set forth in the Schedules unless superseded by the address for such holders set forth in the proofs of Claims filed by Claimants with the Bankruptcy Court.  If no proofs of Claim are filed and the Schedules filed by the Debtor fail to

furnish valid addresses for holders of Allowed Claims, such Allowed Claims shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code at the expiration of six months from the entry of the Confirmation Order, and shall be returned to the Reorganized Debtor.

4.2     **Fee Applications by Professionals**

An application for Professional Fees for services rendered by the Professional Persons in the Reorganization Case and the Plan up to and including the Confirmation Date shall be filed with the Bankruptcy Court on or before forty-five (45) days after the Confirmation Date and shall be paid in accordance with the Plan or as otherwise ordered by the Court.  All Professional Fees and post-Confirmation expenses for services rendered by the Professional Persons in connection with the Reorganization Case and the Plan incurred after the Confirmation Date shall be paid in the ordinary course by the Debtor or the Reorganized Debtor, as the case may be.

**ARTICLE 5**

**PLAN IMPLEMENTATION ISSUES**

5.1     **Conditions to the Effective Date**

In order for the Plan to be deemed effective the following events must occur:

(i)      entry of a Confirmation Order;

(ii)     the Confirmation Order becoming a Final Order; and

(iii)    the consummation of the Exit Financing.

5.2     **Period Prior to Effective Date**

During the period between the Confirmation and Effective Dates, the Debtor shall continue to exercise ownership and control of all Assets and property of its Estate (including the Apartment Buildings).

5.3     **Consummation of Plan**

The Debtor anticipates that the Plan will be substantially consummated upon the closing of the Exit Financing and the distributions under the Plan on the Effective Date in accordance with Bankruptcy Code section 1101(2)(C).   The Plan is to be implemented in a manner consistent with section 1123 of the Bankruptcy Code.  In addition, pursuant to the Confirmation Order and upon Confirmation of this Plan, the Debtor or the Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan.  On or before the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, may file with the Bankruptcy Court any and all agreements and documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and may execute such documents without the need for any further approvals, authorizations or consents.

5.4     **Means for Implementation of Plan**

The Plan will be implemented by and through the proceeds of the Exit Financing.  The Exit Financing will be in the form of an unsecured loan in the approximate amount of $450,000.00.  The proceeds of the Exit Financing shall be sufficient to permit the Reorganized Debtor to fund the Allowed Administrative Claims, the Allowed Priority Tax Claims, the cure payment for SLC and payment of Allowed General Unsecured Claims.  The Debtor has located a number of lenders who may be willing and able to propose terms for and fund the Exit Financing.  The Debtor will file loan documents for the Exit Financing under a notice in the Reorganization Case prior to the Confirmation Hearing, which loan documents are incorporated in and made a part of the Plan.

5.5     **Vesting of Assets in Post-Confirmation Debtor**

As of the Confirmation Date, pursuant to the provisions of section 1141(b) and (c) of the Bankruptcy Code, all property, assets and effects of the Debtor shall vest in the Reorganized Debtor free and clear of all Claims except as otherwise expressly provided in the Plan.

5.6     **Management of Reorganized Debtor**

Messrs. Ben Weinfeld and Eli Weinfeld will continue to manage the Reorganized Debtor. Each principal shall serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of the Debtor's constituent documents.

5.7     **Confirmation Order**

The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan is valid and enforceable pursuant to its terms. If any provisions of the Plan are prohibited by the Bankruptcy Code, the Debtor reserves the right to sever such provisions from the Plan and to request that the Plan, as so modified, be confirmed.

5.8     **Assumption and/or Rejection of Executory Contracts and Unexpired Leases**

Subject to the provisions of this paragraph, all executory contracts and unexpired leases, including the unexpired residential leases pertinent to the Apartment Buildings, which are not otherwise rejected by the Debtor and not terminated by their own terms, shall be deemed assumed under the Plan pursuant to section 365 of the Bankruptcy Code. The Debtor believes it is current on all such agreements to be assumed.

Any Allowed Claims arising out of the rejection of an executory contract or unexpired lease shall be treated as a Class 2 Unsecured Claim. **Each entity that is a party to an executory contract or unexpired lease that is rejected will be entitled to file, not later than 30 days after entry of an order rejecting such executory contract or base, a proof of claim**

for damages alleged to arise from the rejection of such executory contract or lease. Objections to any such claim(s) shall be filed by the Debtor not later than 60 days after the filing of such claim(s) and the Bankruptcy Court shall determine any such objection.

With respect to any executory contracts or unexpired leases that are assumed, the Reorganized Debtor will continue to honor its obligations thereunder in the ordinary course of business.

5.9 **Full and Final Satisfaction**

**All payments, distributions and transfers of Cash and property under the Plan are in full and final satisfaction, settlement, release and discharge of all Claims against the Debtor or of any nature whatsoever. Notwithstanding anything contained in the Plan to the contrary, the Confirmation Order shall and hereby does discharge the Debtor from any debt that arose prior to the Confirmation Date, and any debt of a kind specified in section 502(g) and 502(i) of the Bankruptcy Code. Under no circumstances shall any additional consideration be payable by the Debtor to holders of any such Claims other than as expressly provided under this Plan.**

**As an integral part and in consideration of the settlement and treatment of Claims under the Plan, any Persons and Holders of any Claims that received actual or constructive notice of this Plan shall be and are permanently enjoined and precluded from asserting, commencing, or continuing in any manner any actions or from asserting any lien against the Debtor and its agents, officers, directors, shareholders, advisors, attorneys, and representatives (the "Released Parties") and against any of such parties' respective assets or properties, with respect to any debt, Claim or interest including any guarantee by any of the Released Parties based upon any document, instrument or act, omission, transaction or**

**other activity of any kind or nature arising out of, based upon, or in any way related to the conduct, actions and transactions of the Debtor through the Confirmation Date. Upon Confirmation of the Debtor's Plan, all current actions taken to enforce rights under the Mortgage shall cease.**

5.10 **Exculpation**

**Neither the Debtor nor any of its members, officers, directors, employees, agents, or professionals (as applicable) shall have or incur any liability to any holder of a Claim for any act or omission in connection with, or arising out of, the Reorganization Case, the Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan other than for conduct which constitutes gross negligence, willful misconduct, or a violation of the criminal, tax, environmental and antitrust laws of the United States.**

## ARTICLE 6

## PRESERVATION OF CLAIMS AND CAUSES OF ACTION FOR THE ESTATE

After review of the Debtor's relevant books and records, the Debtor does not believe that there are viable causes of action pursuant to (i) sections 502, 542, 544, 545, 546, 550 and 553 of the Bankruptcy Code; (ii) section 547 of the Bankruptcy Code; (iii) section 548 of the Bankruptcy Code; (iv) section 549 of the Bankruptcy Code; or (v) applicable state law, nor are there any parties for whom the benefit of these actions would inure.

## ARTICLE 7

## MISCELLANEOUS

7.1    **Bankruptcy Fees**

All fees payable under 28 U.S.C. §1930, as determined by the Bankruptcy Court at the hearing on Confirmation of this Plan, shall be paid on or before the Effective Date. Any Post-Confirmation Expenses shall be paid by the Reorganized Debtor. The Debtor will continue to file operating reports until such time as a final decree is issued.

7.2    **Defaults**

In the event of any default in payments required under the Plan, a respective Claimant shall provide written notice to the Debtor and Nieger LLP at the undersigned addresses of the default. Thereafter, the Debtor shall have 30 days (the "Cure Period") to cure any such default from the date of receipt of the required notice as provided herein under. Upon cure of a default, payments shall continue under the Plan as if no default had occurred. In the event the default is not cured within the Cure Period and the Extension Period (as that term is defined below), (i) the Claimant shall have the right to petition the Bankruptcy Court for such relief as it deems appropriate and is supported in law and fact. Notwithstanding the foregoing default provisions in this paragraph, the Cure Period for a default shall be extended (the "Extension Period") an additional ninety (90) days in the event of any act of terrorism or God which adversely impacts upon the ability of the Debtor or Reorganized Debtor to satisfy its obligation under the Plan.

### 7.3 **No Injunctive Relief**

No Claim shall be entitled to specific performance or other injunctive, equitable or other prospective relief except as may be specified in the Plan.

### 7.4 **No Admissions**

Notwithstanding anything herein to the contrary, prior to the Effective Date, nothing contained in the Plan shall be deemed an admission by any party with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim; provided, however, that the provisions of the Plan shall be treated as admissions under the Federal Rules of Evidence upon the Effective Date.

### 7.5 **Time**

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

### 7.6 **Extension of Time**

Any period of time or deadline under the Plan may be extended by agreement of the parties affected thereby, or by order of the Bankruptcy Court upon good cause shown.

### 7.7 **Conflict**

To the extent that terms of Confirmation Order or the Plan are inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any other party, the terms of the Plan control the Disclosure Statement and any such agreement, and the provisions of

the Confirmation Order (and any Final Orders entered by the Bankruptcy Court after the date of the Plan) control the terms of the Plan.

7.8 **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be, deemed to be, an admission or waiver of any rights of the Debtor with respect to any Claims prior to the Effective Date.

## ARTICLE 8

## RETENTION OF JURISDICTION

8.1 The Bankruptcy Court shall retain jurisdiction of Debtor' case pursuant to and for the purposes set forth in section 1127(b) of the Bankruptcy Code and, inter alia, for the following purposes:

8.1(a) To determine any and all objections to the allowance, classification and/or valuation of Claims;

8.1(b) To determine any and all applications for compensations and reimbursement of expenses for Professional Fees, Administrative Claims and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

8.1(c) To amend or modify the Plan to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

8.1(d)  To determine any and all controversies and disputes arising under or related to the Plan;

8.1(e)  To construe and enforce any and all provisions of the Plan;

8.1(f)  To determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases under 365 of the Bankruptcy Code to which the Debtor is a party or with respect to which it may be liable, and to hear and determine and, if need be, to liquidate, any and all claims arising therefrom;

8.1(g)  To determine any and all applications, motions, Adversary Proceedings and contested or litigated matters commenced within 90 days of the Effective Date;

8.1(h)  To determine the validity, priority and extent of liens, Claims and encumbrances upon property of the Estate and to determine any questions and issues regarding title to and interests in any property of the estate and to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor or the debtor in possession;

8.1(i)  To determine any and all controversies and disputes arising under or related to any settlement of any Adversary Proceeding or contested matter approved by the Bankruptcy Court, either before or after the Confirmation Date;

8.1(j)  To enforce any and all injunctions created pursuant to the terms of the Plan;

8.1(k)  To enter a Final Order or decree in the Debtor's Reorganization Case; and

8.1(l)  To determine such other matters as may be provided for in the Plan, Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code or the Bankruptcy Rules.

# ARTICLE 9

## AMENDMENT AND INTERPRETATION OF THIS PLAN

### 9.1     Modification of the Plan

The Debtor reserves their right to propose amendments or modifications to the Plan at any time prior to the date of the entry of the Confirmation Order, except as provided in the Plan. After the date of the Confirmation Order, the Debtor may, without approval of the Bankruptcy Court, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan so long as it does not materially or adversely affect Claimants.

### 9.2     Headings

The headings of Articles and Sections used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions or interpretations hereof.

### 9.3     Severability

Should any provisions of this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions or provision of this Plan, except to the extent that any provision so determined to be unenforceable is or was a condition precedent to this Plan set forth in Article 5 of this Plan.

### 9.4     Successors and Assigns

The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the executors, administrators, successors, trustee and assigns of such Person.

### 9.5 **Rights if Plan is Not Confirmed**

If Confirmation of the Plan does not occur, the Plan shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

### 9.6 **Internal References**

The words "herein" or "hereof," "hereto," "hereunder" and any other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan.

Dated:    January 11, 2011


/s/Ben Weinfeld
Ben Weinfeld
*Member*


NEIGER LLP
Proposed Attorneys for Debtor

BY:    */s/* Edward E. Neiger
       Edward E. Neiger, Esq.
       317 Madison Avenue
       21st Floor
       New York, NY  10017
       Telephone: (212) 267-7342
       Facsimile: (212) 918-3427